[L.A. No. 31937. Aug. 22, 1985.]

STATE BOARD OF EQUALIZATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
O'HARA & KENDALL AVIATION, INC., Real Party in Interest.

634

**COUNSEL**

John K. Van de Kamp, Attorney General, Arthur C. de Goede, Assistant Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Donald E. Oliver for Real Party in Interest.

OPINION

BIRD, C. J.— When a taxing authority accepts partial payment of a tax that it claims is due, does article XIII, section 32 of the California Constitution[1] bar the taxpayer from commencing an action for a refund of that payment before the full amount of the disputed tax is paid?

I.

Real party in interest, O'Hara & Kendall Aviation, Inc. (O'Hara), is a small aircraft dealer located in California. It holds a seller's permit as required by Revenue and Taxation Code section 6066.[2] Many of its customers are from out of state. Pursuant to sections 6366 and 6421, O'Hara requires that its customers either pay the California sales tax or execute a written declaration that the conditions for exemption from that tax are met.[3]

On July 13, 1982, the Board of Equalization (Board) sent O'Hara a notice of determination that $187,576.92 was owed in sales taxes and interest for several quarterly reporting periods between October 1, 1978, and September 30, 1981.[4] This figure was based on the Board's determination that 31 sales made during these quarters, which O'Hara claimed were exempt under section 6366, were in fact taxable.

---

[1]Article XIII, section 32 provides that "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

[2]That section provides that "[e]very person desiring to engage in or conduct business as a seller within this state shall file with the board [of equalization] an application for a permit for each place of business. . . ."

All subsequent statutory references are to the Revenue and Taxation Code unless otherwise noted.

[3]Section 6366 sets forth the conditions for exemption. That section provides, inter alia, that a sale of aircraft will not be taxed if the sale is to "persons who are not residents of this state and who will not use such aircraft in this state otherwise than in the removal of such aircraft from this state."

Section 6421 provides that a seller is relieved from sales tax liability if he accepts in good faith a certificate from the purchaser that the property will be used in such fashion as to qualify for an exemption from sales tax. "If a purchaser certifies in writing to a seller that the property purchased will be used in a manner or for a purpose entitling the seller to regard the . . . sale as exempted . . . from the . . . sales tax, and uses the property in some other manner or for some other purpose, the purchaser shall be liable for payment of sales tax as if he were a retailer making a retail sale of the property . . . . The certificate shall relieve the seller from liability for the sales tax only if it is taken in good faith."

[4]This notice was given pursuant to sections 6481 through 6488, which authorize the Board to issue and serve a "deficiency determination" on a taxpayer whenever the Board determines that tax returns do not reflect the full amount of sales or use tax required to be paid. Such determination becomes final 30 days after service unless the taxpayer files a petition for redetermination. (§ 6561.)

On July 23, 1982, O'Hara served a petition for redetermination on the Board.[5] O'Hara asserted that it had obtained sufficient documentation in each disputed sale to support the customer's declaration that the exemption requirements of section 6366 would be met. Thus, O'Hara claimed, it came within section 6421's provision that it was not liable for any sales tax since it received these declarations in good faith. Further, O'Hara asserted on information and belief that the Board had issued determinations against the various customers for the same taxes claimed due from O'Hara.

At the same time it filed the petition for redetermination, O'Hara sent the Board a check for $250. In a cover letter, O'Hara stated that the check was partial payment on the July 13th determination. O'Hara requested the Board to apply the $250 by apportioning it according to the amount of tax claimed to be due on each transaction.

By letter dated August 6, 1982, the Board's counsel informed O'Hara that staff had been advised to credit the $250 to O'Hara's account. The letter did not specifically grant O'Hara's request that the amount be applied proportionately to each transaction. It concluded, "If we are missing some purpose to be served here by a more detailed application, your contentions in that regard can be presented to the hearing officer who will eventually hear the petition for redetermination which you filed on July 23, 1982 on behalf of O'Hara & Kendall."

The purpose to be served by a more detailed application soon unfolded. On January 31, 1983, O'Hara filed a claim for a refund of the $250 payment.[6] O'Hara asserted that payment applied proportionately to each disputed transaction. It further contended that in fact it had no tax liability as to any of the sales. Thus, the $250 payment was an overpayment and was refundable on demand.

---

[5]Section 6561 provides that "[a]ny person against whom a determination is made . . . or any person directly interested may petition for a redetermination within 30 days after service upon the person of notice thereof. . . ." Upon request, the taxpayer is entitled to an oral hearing on his petition. (§ 6562.)

Timely filing of a petition for redetermination stays the finality of a deficiency determination until 30 days after the order or decision on that petition is served on the petitioner. (See §§ 6561-6565.)

[6]Sections 6901 through 6908 set forth the taxpayer's postpayment administrative remedy for the recovery of excessive taxes paid. These sections allow the taxpayer to file a claim for refund of any sales or use tax allegedly overpaid.

This administrative remedy must be exhausted before any court action is commenced. "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has been duly filed . . . ." (§ 6932.) However, if the Board fails to act on a refund claim within six months, the taxpayer may elect to consider it disallowed and to commence his legal action against the Board. (§ 6934.)

Having received no decision on its claim for refund after nearly eight months, O'Hara filed a complaint in the Los Angeles County Superior Court on September 19, 1983. The complaint incorporated the allegations of the claim for refund and sought recovery of the amounts overpaid plus interest. The July 23, 1982, petition for redetermination was still pending when the complaint was filed.

The Board demurred and moved to strike the complaint, claiming that O'Hara had failed to exhaust its administrative remedies because it had not waited for a final decision on the 1982 petition for redetermination. Furthermore, the Board argued that under article XIII, section 32 of the state Constitution no action for refund could be maintained until the full amount of tax due was paid. In view of the anticipated res judicata effect of O'Hara's court action on the remainder of the disputed tax, the Board argued, O'Hara was in effect seeking prepayment declaratory relief as to the validity of the entire disputed amount. Such a remedy is barred by article XIII, section 32.[7]

The trial court overruled the Board's demurrer and denied the motion to strike. The Board, by petition for writ of mandate, seeks review of those orders.

## II.

■ Article XIII, section 32 provides that an action to recover an allegedly excessive tax bill may be brought "[a]fter payment of [that] tax . . . ." Additionally, the section bars a court from issuing any "legal or equitable process . . . against this State or any officer thereof to prevent or enjoin the collection of any tax." Read together, these two portions of section 32 establish that the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid.

■ The important public policy behind this constitutional provision "is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." (*Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463].) "The fear that persistent

---

[7]See footnote 1, *ante.*

Section 6931 applies article XIII, section 32 to sales and use tax disputes. That statute provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any tax or any amount of tax required to be collected."

interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. [Citation.] As was said by Mr. Justice Field in *Dows* v. *City of Chicago*, 11 Wall. (78 U.S.) 108, 110 [20 L.Ed. 65], 'Any delay in the proceedings of the officer, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' " (*Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 731-732 [192 P.2d 916].)

" 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason.' (*Springer* v. *United States* [1881] 102 U.S. 586, 594 [26 L.Ed. 253]; cited with approval in *People* v. *Skinner* [1941] 18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299].)" (*Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 665 [192 P.2d 17].)

■ The constitutional provision has been construed broadly to bar not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax. In *Modern Barber Col.* v. *Cal. Emp. Stab. Com.*, *supra*, 31 Cal.2d 720, the taxpayer sought mandamus to compel the commission to vacate its finding that he was an employer of several persons within the meaning of the Unemployment Insurance Act and to cancel the charges made against him pursuant to this finding. He admitted that he had paid none of the contributions which the commission claimed were due. Prepayment judicial review was prohibited by section 45.11, subdivision (d) of the Unemployment Insurance Act (see present Unemp. Ins. Code, § 1851) in language virtually identical to that of article XIII, section 32 and section 6931.

In holding for the commission, this court stated: "We may at the outset dispose of the suggestion by petitioner that this proceeding is not one to 'prevent or enjoin' the collection of a contribution because the only relief prayed for is the vacation of the findings of the existence of the employer-employee relationship made by the commission. It is obvious that a judgment directing the commission to vacate its findings would in effect amount to a declaration by the court that the relationship did not exist; the commission after such a judgment could not 'properly undertake to enforce a tax against plaintiff corporation as an employer in defiance of an adjudication that the latter [asserted employer] did not maintain that relationship with the other parties.' (*Louis Eckert B. Co.* v. *Unemployment R. Com.* [1941] 47 Cal.App.2d 844, 846 [119 P.2d 227].) The Eckert case held that because of the statute above quoted an action for declaratory relief cannot be maintained to determine the existence of the employer-employee relationship

prior to the payment of the tax.[8] Since the net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose. [Citation.]" (*Modern Barber Col.* v. *Cal. Emp. Stab. Com.*, *supra*, 31 Cal.2d at p. 723; see also *Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 178-180 [32 Cal.Rptr. 1, 383 P.2d 409].)

More recently, this court held that a public utility could not maintain an action in mandamus to compel the Board of Equalization to adjust the assessment of its real property prior to payment of the property tax. (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization, supra,* 27 Cal.3d at p. 280.) Although the utility did not literally seek to enjoin the collection of property taxes, the court found that "[o]n its face [article XIII, section 32] appears to bar actions of the type before us. It is certainly true that the assessment of real property is an integral part of the taxing process, and a court order invalidating an assessment will in effect 'prevent or enjoin the collection' of the tax. [Citations.] It is also the rule that a taxpayer may not circumvent restraints on prepayment tax litigation by seeking only declaratory relief. [Citations.]" (*Ibid.*; see also *Honeywell, Inc.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 912 [122 Cal.Rptr. 243]; *Casey* v. *Bonelli* (1949) 93 Cal.App.2d 253 [208 P.2d 723]; cf. *Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 236 [104 Cal.Rptr. 558].)

 Like the actions in *Modern Barber, Eckert,* and *Pacific Gas & Electric Co.*, the present action seeks a binding judicial declaration of the validity of unpaid taxes. This is so because resolution of O'Hara's claim will require the court to adjudicate the total amount due for any tax period to which the $250 payment is applied.

The sales tax is not a tax on isolated transactions. It is a tax on the privilege of selling personal property at retail. (§ 6051.) It is payable quarterly (§§ 6451-6454) and the quarterly bill is measured by the seller's gross receipts for the quarter in question. (§ 6051.) A judicial claim for a refund of any taxes paid during a given quarter would require a court to determine whether the amount paid was in excess of the amount due. Necessarily, the court would first have to determine the amount due for that quarter.

---

[8]As the *Eckert* court observed, "[a] declaratory judgment is an adjudication, not an abstraction. [Citation.] Public officials must respect the court's declaration and follow its interpretation of the law. [Citation.] For purposes of judicial finality there is no more reason for assuming that a commission will disregard the direction of a reviewing court than that a lower court will do so. [Citation.]" (*Louis Eckert B. Co.* v. *Unemploy. R. Com.* (1941) 47 Cal.App.2d 844, 846 [119 P.2d 227].)

It can be seen that the doctrine of res judicata would preclude the Board from later litigating the validity of the unpaid portion of the tax for any disputed quarter. ■ "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. [Citations.]" (*Brown* v. *Felsen* (1979) 442 U.S. 127, 131 [60 L.Ed.2d 767, 771, 99 S.Ct. 2205].) ■ Thus, in the present action, the Board will be compelled to raise all claims concerning the unpaid taxes for the disputed quarters which might offset O'Hara's claim or forego the right ever to collect any taxes for those periods.

The doctrine of res judicata was applied to tax refund litigation in *Pope Estate Co.* v. *Johnson* (1941) 43 Cal.App.2d 170 [110 P.2d 481]. There, the taxpayer had paid the entire amount claimed due for the tax year 1933. In superior court, he sought and was awarded a judgment refunding part of this amount. After entry of judgment, the tax commissioner attempted to deduct from the refund an additional amount which the commissioner had determined (after expiration of the statute of limitations) to be owed for 1933.

The Court of Appeal held that res judicata barred the state's belated collection effort. "When the taxpayer . . . brought the action in the superior court for a refund of a portion of its 1933 tax, it put into issue the question as to whether a refund for the year 1933 was due to it. This placed in issue the question as to the total amount due from the taxpayer for the year 1933. The state, in that action could have raised the defense that, although the . . . claim for refund was proper, there were other items which the taxpayer had omitted from its return for that year, which, if included, would show that the taxpayer had underpaid its tax . . . . Therefore, when the court adjudicated that the taxpayer had overpaid its 1933 tax in an amount in excess of $3,000, it was in effect adjudicating that no other sum was due from the taxpayer." (*Pope Estate Co.* v. *Johnson, supra,* 43 Cal.App.2d at p. 173.)

The court continued, "[a] suit for a recovery of the whole or a portion of a tax for a particular year throws open all questions relating to the same tax year. Neither the tax collecting authorities nor the taxpayer are at liberty to split up the question and prosecute in the courts the question as to liability for that year piecemeal. The rule is quite absolute in its character and applies so as to prevent a second action in the courts involving a particular year's liability even though the facts upon which the second suit rests oc-

curred after the first was decided. [Citations.]" (*Pope Estate Co. v. Johnson, supra,* 43 Cal.App.2d at p. 174.)[9]

O'Hara's action would require adjudication of its tax liability for each disputed quarter. It would throw open all questions relating to the validity of the tax assessed for each quarter. The Board would be compelled to litigate the validity of the entire tax bill, since a judgment in O'Hara's favor would bar any subsequent Board action to collect additional taxes. Yet, the lion's share of the assessed taxes would remain unpaid. Adjudication of its validity is exactly the result which article XIII, section 32 forbids. "Since the net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose. [Citation.]" (*Modern Barber Col. v. Cal. Emp. Stab. Com., supra,* 31 Cal.2d at p. 723.) Accordingly, O'Hara's action is constitutionally prohibited.

Nothing in today's decision prohibits the Board from accepting partial payments at the taxpayer's request or from agreeing to accept installment payments. Indeed, there may be sound equitable and practical reasons for the Board to accept partial payments. In some cases, the taxpayer may wish to make a partial payment to stop interest from accruing on at least a portion of his potential tax bill while redetermination proceedings are pending. In other cases, an installment plan may offer the best prospect for the taxing authority to collect the full amount without putting the taxpayer out of business. Today's decision holds only that where such partial payment is made

---

[9]As *Pope Estate* noted, the bar of res judicata may operate against the taxpayer as well as against the tax collector. In *Guettel* v. *United States* (8th Cir. 1938) 95 F.2d 229 [118 A.L.R. 1060], the taxpayer had successfully brought an action for refund of a portion of his federal estate tax, claiming that certain items should not have been included in the estate. He later brought a second action, claiming that certain real property as well should not have been included in the taxable estate. This second action was held barred by the judgment in the first.

"The estate tax was an entirety. It was a single tax based upon percentages of the net taxable value of the whole estate. It was not an aggregation of separate taxes upon separate items which went to make up the net taxable value of the estate. . . . [T]he whole excess arose out of one transaction and was a single cause of action, regardless of the number of grounds upon which the tax was excessive. . . . [¶] 'The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. *In the former case a judgment upon the merits is an absolute bar to a subsequent action.'* [Citation.] The reason for this is that a judgment, if rendered upon the merits, is conclusive not only as to all matters which were decided, but as to all matters which might have been decided. [Citations.] The appellants were not at liberty to split up their claim for the recovery of their overpayment of the estate tax, and to prosecute it piecemeal or to present in their first suit only a portion of the grounds upon which they based their claim that the tax had been overpaid, and leave another ground or other grounds to be presented in a subsequent action. [Citations.]" (*Guettel* v. *United States, supra,* 95 F.2d at pp. 230-231, quoted in *Pope Estate Co.* v. *Johnson, supra,* 43 Cal.App.2d at pp. 174-175, italics in original.)

and accepted by the taxing authority, an action for refund may not be maintained until the full amount claimed due for a given reporting period is paid.[10]

Accordingly, let a peremptory writ of mandate issue, requiring respondent court to vacate its order overruling the Board's demurrer and denying the motion to strike and to enter a new order sustaining the demurrer without leave to amend.[11]

Mosk, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**KAUS, J.**—Although I agree with the majority's conclusion—a taxpayer who has made only partial payment of a tax may not sue for a refund—I believe that that holding follows from article XIII, section 32 of the California Constitution itself, rather than from the additional res judicata analysis set forth in the majority opinion. (See *ante*, p. 641.) As *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 731-732 [192 P.2d 916] and *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463] make clear, article XIII, section 32 embodies the important public policy of ensuring that the government is not deprived of tax revenues while questions of the validity or the amount of a tax are being litigated. That purpose would surely be undermined if taxpayers could maintain actions for refund after simply paying a nominal portion of the tax that is allegedly due. Thus, the majority's res judicata analysis is unnecessary to its conclusion.

Furthermore, not only is the majority's res judicata discussion unnecessary, but I have serious doubts whether it is correct. The analysis rests on the proposition that "resolution of O'Hara's claim [for refund of the $250 partial payment] will require the court to adjudicate the total amount due for any tax period to which the $250 payment is applied." (*Ante*, p. 640.) Why should that be so? Suppose that the board claims that O'Hara actually owes $2,000 for the relevant tax period, but that evidence of the alleged liability above $1,000 is more difficult to come by than is evidence of the first $1,000 of liability. If a taxpayer were permitted to pay only $250 and to sue for a refund of that limited amount, why would the board not be able to show simply that the tax liability for the relevant period was unquestionably more than $250, and thus that the taxpayer is clearly not entitled to a

---

[10]To the extent they are inconsistent with today's decision, *Snoozie Shavings, Inc. v. State Bd. of Equalization* (1979) 97 Cal.App.3d 771 [158 Cal.Rptr. 866] and *Schaffer v. State Board of Equalization* (1952) 109 Cal.App.2d 574 [241 P.2d 46] are disapproved.

[11]As the action is barred by article XIII, section 32, it is not necessary to reach the Board's alternative contention that by bringing suit before its petition for redetermination was decided, O'Hara failed to exhaust its administrative remedies.

refund of any of the $250 payment? Why should the board be required to prove the taxpayer's *entire* tax liability simply to defeat a clearly meritless suit for refund of a small partial payment?

If a taxpayer seeks to pursue a partial payment refund action, it is clear that *the board* cannot appropriately be accused of "splitting a cause of action" if it simply puts on sufficient evidence to defeat the taxpayer's refund claim. *Pope Estate Co.* v. *Johnson* (1941) 43 Cal.App.2d 170 [110 P.2d 481], discussed by the majority, is clearly distinguishable from the present case, for there the taxpayer had paid under protest all taxes which the board had alleged were due for the year in question and had obtained a final judgment entitling it to a specified refund; res judicata principles were applied simply to prohibit the board from reducing the amount of the refund embodied in the final judgment in favor of the taxpayer. Nothing in *Pope Estate* suggests that if the board had prevailed in the initial refund action, res judicata principles would have required the board not only to defeat the taxpayer's initial claim for refund but also to defeat all potential future refund actions that the taxpayer might bring.[1]

Accordingly, if a partial payment refund action were permitted, I do not think it is at all clear that the board would necessarily be obligated by res judicata principles to litigate the question of the taxpayer's entire tax liability in the taxpayer's initial refund suit. Nonetheless, as explained at the outset, the importance of the doctrine embodied in article XIII, section 32 is such that we need not rely on the doctrine of res judicata to thwart real party's attempt to evade it. Thus, I concur in the judgment.

Lucas, J., concurred.

---

[1]It may be that if we were to hold that a taxpayer could bring a partial payment refund action, the taxpayer would be limited—by the rule prohibiting the splitting of a cause of action—to one such refund action, and that even if it prevailed in the initial action it would only be entitled to avoid payment of the specific amount litigated in that action. In other words, even if the taxpayer were successful in its initial partial refund suit, it would remain liable for all of the remaining unpaid taxes relating to the tax period in question.

While this consequence would certainly make the partial payment refund procedure less attractive from the taxpayer's point of view, permitting even one partial payment refund action would still enable the taxpayer to litigate the validity of an assessed tax without paying the tax bill in full. Thus, the state's interest in prompt revenue collection would still be thwarted.