[No. A044582. First Dist., Div. Two. July 25, 1990.]

OSCAR CHAHINE, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for publication with the exception of sections IIA, IIC and IID.

COUNSEL

David M. Kirsch for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard R. Finn and Marguerite
C. Stricklin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

PETERSON, J.—Oscar Chahine appeals from a judgment in favor of the
State Board of Equalization (the Board) on his suit for a refund of sales and
use taxes. He claims primarily that he was denied due process of law, that
the judgment is not supported by substantial evidence, that the court made
certain evidentiary errors in admitting testimony at trial, and that the court
erred when it held certain portions of his claim for a refund were untimely.
We find appellant's arguments without merit and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his wife were the sole shareholders in a California corpora-
tion known as New Age Marketing, Inc. (New Age). In September 1969,
appellant, on behalf of New Age, filed an application with the Board for a
sales permit. The application indicated that New Age would be operating
under the name "Taj Mahal Factory Homes," and that the sole purpose of
the business would be the sale of mobilehomes. New Age filed quarterly tax
returns and prepaid its sales and use taxes from October 1969 through
December 1970. The return filed for the fourth quarter of 1970 indicated
that the business had ceased as of August 1970.

The Board conducted an audit of New Age in 1971. As a result of the
audit, the Board concluded that New Age owed additional taxes, and that
appellant had intermingled his own affairs with those of New Age to such
an extent the corporate character of New Age should be disregarded. Thus,
notices of determination assessing additional taxes were issued to both New
Age and appellant. Included in assessments were a 10 percent penalty for
failure to file returns and a 25 percent penalty for fraud or an intent to
evade a tax. Appellant failed to effect a proper protest, and the assessments
became final.

In the ensuing years, the Board collected a substantial sum of money
from appellant based upon the amounts assessed. Then, in March 1986,
appellant filed a claim for refund asking that $17,095.12 be returned, as it

was illegally and improperly collected. When the Board failed to act upon appellant's request within the statutory period, he elected to consider his claim denied and filed the present action.

The matter was tried in the San Francisco Superior Court in October 1988. After a one-day trial, the court issued a judgment finding, inter alia, that appellant was the alter ego of New Age and that he had filed fraudulent returns on its behalf. The present appeal followed.

## II. DISCUSSION

### A. *Jurisdiction**

. . . . . . . . . . . . . . . . . . . . .

### B. *Due Process*

Appellant first claims he has been denied due process of law. He notes that, after the audit in 1971, notices of determination and assessments of additional tax liability and penalties were issued not only against New Age, but also against him in his individual capacity. He claims he never received an explanation of why the Board imposed taxes on him individually and, thus, that he had no way to challenge the determination. ■ Whatever the merit to this contention, we cannot address it on this appeal because appellant failed to properly preserve the issue. Before a taxpayer may file an action against the state to recover a use or sales tax he has paid, he must first file a claim with the Board. (Rev. & Tax. Code,[1] §§ 6932, 6901-6908.) The claim must be in writing and must state the specific grounds upon which it is founded. (§ 6904.) A suit against the state following the Board's action (or inaction) on the claim must be on the grounds set forth in the claim. (§ 6933.) A taxpayer's action is confined to and restricted by the grounds set forth in his claim. (*A&M Records, Inc.* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 358, 367 [250 Cal.Rptr. 915].) Here, the claim filed by appellant prior to filing the present suit made no mention of a due process challenge. Appellant was, thus, barred from raising the issue before the court below. Nor can he raise the issue on this appeal.

### C., D.*

. . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 485.
[1] All subsequent statutory references are to the Revenue and Taxation Code.

### E. *Timeliness of Refund Claim*

■ Finally, appellant claims the court erred in limiting his ability to seek a refund of the taxes he had paid. We disagree.

In his claim for refund submitted to the Board on March 20, 1986, appellant sought to recover $17,095.12 he had paid in seven installments between March 1972 and November 1985. At trial, the Board argued that appellant's administrative claim for all amounts paid prior to September 20, 1985, was untimely and, thus, was not properly recoverable in the suit. The court agreed and held that appellant's action was not timely as to all amounts collected prior to September 20, 1985.

The court's ruling was based upon section 6902, subdivision (a) which provides in part, "no refund shall be approved by the board . . . after six months from the date of the overpayment, . . . unless a claim therefor is filed with the board within such period." Section 6905 further provides that the "Failure to file a claim within the time prescribed . . . constitutes a waiver of any demand against the State on account of overpayment." These sections are clearly intended as statutes of limitation. (See *Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 7 [102 Cal.Rptr. 766, 498 P.2d 1014]; *Independent Iron Wks.* v. *State Bd. Equal.* (1959) 167 Cal.App.2d 318, 324 [334 P.2d 236].) To the extent appellant failed to file his refund claim with the Board in the applicable period, it was administratively barred.

Appellant disputes this conclusion. He asserts we should construe the word "overpayment" in section 6902 to mean "payment [in] full of the periodic liability for which claim is made." (Italics omitted.) In support of this argument, appellant relies on *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 642-643 [217 Cal.Rptr. 238, 703 P.2d 1131], in which our Supreme Court held that an action for a tax refund may not be maintained until the full amount claimed due for a given reporting period is paid. While not expressly stated, the thrust of this claim is that, because a legal action for the recovery of a tax may not be maintained until a periodic liability is paid in full, the time limit for pursuing the administrative remedy which must be exhausted prior to filing suit should not begin until a liability is fully paid.

We are unpersuaded. The result of the construction urged by appellant would be to provide no time limit for the recovery of amounts paid as long as some portion of a periodic liability was left unsatisfied. A claim could be left open for years or even decades.

This is not a case where the Board and a taxpayer entered into an agreement to permit periodic payments over a specified time, or to toll the application of section 6902 in any way. Rather, the record indicates that the amounts appellant sought as a refund were at least partially collected involuntarily. Article XIII, section 32, of the California Constitution as explained by *State Bd. of Equalization, supra,* establishes a public policy enforcing prompt payment of public tax revenues, uninhibited by pending resolution of disputes between taxpayers and the state as to their validity or amount. (39 Cal.3d at pp. 638, 639, 643 (conc. opn. of Kaus, J.).)

The time extension appellant thus suggests, for an administrative petition for refund of partial payments on quarterly taxes, would effectively deprive the state of timely payments of tax revenues. A taxpayer could effectively defer timely payment in full of accrued quarterly taxes claimed due by making token partial payments only, while preserving indefinitely his administrative option to seek full refund of all such partial payments until he unilaterally chose to pay the deferred balance claimed due. That result would clearly frustrate the public policy embodied in article XIII, section 32, of the California Constitution.

■ One of the primary rules of statutory construction is that we must give a provision a reasonable and commonsense interpretation which will result in wise policy consistent with constitutional requirements, rather than with mischief or absurdity. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) The interpretation which appellant offers could lead to absurd results. ■ We hold that under section 6902 a taxpayer who seeks a refund of taxes he has paid in *partial* satisfaction of a periodic tax liability must petition for refund thereof within six months from the date of such partial payment.

III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.