[No. C010772. Third Dist. Apr. 27, 1992.]

PETER MASI et al., Plaintiffs and Appellants, v.
THOMAS P. NAGLE, as Director, etc., Defendant and Respondent.

## COUNSEL

Paul F. Utrecht for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, James B. Cuneo, Assistant Attorney General, and Robert D. Milam, Deputy Attorney General, for Defendant and Respondent.

## OPINION

SIMS, J.—Plaintiffs Peter Masi and Sheila Masi, doing business as California Home Cleaning (taxpayers), appeal from summary judgment entered in favor of defendant Alice Gonzalez, Director of Employment Development Department (EDD), in the taxpayers' action for a refund of taxes assessed and collected by EDD as employer contributions under the Unemployment Insurance Code.[1] Summary judgment was granted on the ground that payment of the entire assessment, which covered several quarterly reporting periods, was a precondition to suit. On appeal, the taxpayers contend their payment of that portion of the assessment attributable to *one* reporting period entitles them to maintain a refund action as to that one reporting period. We disagree and will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1985, EDD audited the taxpayers' carpet cleaning business and, upon its determination that certain workers were employees rather than independent contractors, assessed a tax liability for unemployment insurance contributions. The notice of assessment encompassed several quarterly reporting periods from 1983 through 1985. The notice of assessment calculated the tax liability for each reporting period and added those figures for a total "AMOUNT [] DUE AND PAYABLE" of $33,912.50.

The taxpayers filed an administrative petition for reassessment, which was denied in 1988. In 1989, the taxpayers paid $548.23, which represented the tax and interest for only *one* reporting period—the first quarter of 1983. The taxpayers sought a refund of the $548.23. EDD applied the payment to the 1983 first quarter, per the taxpayers' request, but advised that a refund claim could not be reviewed until the entire amount of the $33,912.50 assessment was paid. In the taxpayers' pursuit of administrative recourse, an administrative law judge and the appeals board upheld EDD's position.

---

[1]The director of EDD is the named defendant. Because of the unity of interest of the director and EDD, our designation "EDD" includes the director.

Since entry of judgment, Thomas Nagle has replaced Alice Gonzalez as director.

In 1990, the taxpayers filed this court action seeking a refund of the $548.23. EDD raised as an affirmative defense that the court lacked subject matter jurisdiction because the taxpayers had "failed to meet the preconditions to suit." The taxpayers filed a motion for summary adjudication to eliminate the defense. EDD filed its own motion for summary judgment on the grounds that the taxpayers (1) had failed to meet the preconditions to suit in that they had not paid the full amount of the assessment at issue, and (2) had failed to exhaust administrative remedies in that there had been no administrative determination on the merits due to the failure to pay the full amount of the assessment.

The trial court granted EDD's summary judgment motion on the ground that full payment of the total amount due was a precondition to suit.

### DISCUSSION

The taxpayers contend payment of the entire tax for one reporting period out of a multiple-reporting-period assessment is sufficient to maintain a refund action, because the action does not require litigation of the validity of tax liability for the unpaid periods and will not interfere with tax collection for the unpaid periods. We will conclude the taxpayers' arguments are unavailing, because the relevant statutes require full payment of the multiple-reporting-period assessment under the circumstances of this case.

"In order to challenge a [] tax, the taxpayer must first pay the tax, then follow statutory procedures for recovery. Thus, California Constitution, article XIII, section 32 . . . provides: 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*' (Italics added.)" (*Shiseido Cosmetics (America) Ltd.* v. *Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 486 [286 Cal.Rptr. 690] [state franchise tax].) The Constitution thus grants the power to the Legislature to prescribe the manner of proceeding in tax cases. (*Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207, 1214 [214 Cal.Rptr. 9] [failure to satisfy statutory condition to suit was fatal to action for refund of employer contributions assessed and collected under Unemployment Insurance Code].)

The applicable statutory scheme—virtually ignored by the parties on appeal—is as follows:

The reporting period for employer contributions to unemployment insurance is on a quarterly calendar basis. (Unemp. Ins. Code, §§ 1088, 1110, 13021; undesignated statutory references are to this code.)

If an employer fails to file a required return or files an unsatisfactory return, the director may (within the limitations period) make an "assessment" of the taxes due. (§§ 1126-1127, 1131-1132.) ▆▆▆ Of critical importance to this case is section 1130 which provides: "One or more assessments may be made for the amount due for one or for more than one period and overpayments may be offset against underpayments." In condensed form, this provision authorizes "One [] assessment[] may be made for the amount due [] for more than one period . . . ." (§ 1130.) "The director shall give to the employing unit against whom an assessment is made a written notice of the assessment . . . ." (§ 1131.)

Here, one notice of assessment was served for one "AMOUNT [] DUE AND PAYABLE" for more than one period. We conclude this constitutes one assessment, for $33,912.50.

Where, as here, a taxpayer files a *prepayment* administrative petition for reassessment, and that petition is denied, the taxpayer must pay "the amount of the assessment" as a precondition to further administrative or judicial review. Thus, section 1178, subdivision (d) provides: "Following a final decision denying a petition for reassessment pursuant to Article 11 (commencing with Section 1221), the employing unit or other person which was a party to the petition may file a claim for refund *upon payment of the amount of the assessment, including interest and penalties,* and thereafter may pursue all administrative and judicial review rights accorded in Article 11 (commencing with Section 1221) and Article 12 (commencing with Section 1241)." (Italics added.)[2] The filing of the refund claim is a precondition to judicial action. (§ 1241, subd. (a).)

Sections 1130 and 1178, subdivision (d), end the matter in EDD's favor. EDD was authorized to and did make one $33,912.50 assessment for multiple reporting periods. The taxpayers' failure to pay the $33,912.50 assessment (plus interest and penalties) is fatal to this action.

The parties do not address these statutes. The taxpayers instead argue the code authorizes this action because section 1178, *subdivision (b),*[3] requires that a claim for refund be made within a certain time after the date of "overpayment." However, this statute of limitations is of no help in resolving the antecedent question of what amount must be paid.

---

[2]This key provision was added to section 1178 in 1986 (Stats. 1986, ch. 89, § 3, p. 220, eff. May 13, 1986), hence applies here where the petition for reassessment was denied in 1988 and payment made in 1989.

[3]Section 1178, subdivision (b), provides in part: "No refund shall be made or credit allowed unless a claim therefor is filed with the director within three years from the last day of the calendar month following the close of the calendar quarter for which the *overpayment* was made or within six months after assessments made under Article 8 (commencing with Section

Though not cited by the taxpayers, we note a 1954 case allowed a taxpayer to maintain suit for refund of employer contributions under the Unemployment Insurance Code upon payment of the taxes due for one reporting period, even though the Department of Employment had assessed liability for multiple periods. (*Dept. etc. Veterans Foreign Wars* v. *Kunz* (1954) 125 Cal.App.2d 19 [269 P.2d 882].) However, that case predated enactment of section 1178, subdivision (d), requiring payment of the "assessment," hence the court was not required to consider whether the total liability constituted one assessment.

We conclude the statutes required the taxpayers to pay the $33,912.50 assessment plus interest and penalties as a precondition to this action.

The taxpayers rely on *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633 [217 Cal.Rptr. 238, 703 P.2d 1131], which held that where partial payment of assessed sales tax liability was made and accepted by the taxing authority, the taxpayer could not maintain a refund action until the full amount claimed for at least one reporting period was paid. (*Id.* at pp. 642-643.) However, *State Bd. of Equalization* is inapplicable here. The court there dealt with a different tax scheme and referred to provisions of the Revenue and Taxation Code that "allow the taxpayer to file a claim for refund of any sales or use tax allegedly overpaid." (*Id.* at p. 637, fn. 6.) Thus, the Supreme Court was concerned with whether a refund action that was not statutorily barred would nonetheless collide with the constitutional proscription against prepayment review interfering with tax collection. In contrast, we deal here with a specific statutory requirement (enacted after the *State Bd. of Equalization* decision) that the taxpayer pay "the amount of the assessment, including interest and penalties," as a precondition to administrative and judicial review rights. (§ 1178, subd. (d).) As noted, an "assessment" may—and in this case did—encompass more than one reporting period. (§ 1130.) Thus, *State Bd. of Equalization* is not controlling, and EDD's purported "acceptance" of partial payment does not save this action. Adherence to the statutory procedures is compelled "by the constitutional grant of power to the Legislature to prescribe the manner of proceeding in such cases. [] We are not at liberty to alter the constitutionally authorized process by engrafting onto it exceptions borrowed from [] judicially fashioned doctrine[s] . . . ." (*Patane* v. *Kiddoo, supra,* 167 Cal.App.3d at p. 1214.)

The taxpayers complain their action for refund of the $548.23 will be barred by the statute of limitations if they "wait" until the entire assessment

---

1126) of this chapter become final or within 60 days from the date of *overpayment*, whichever period expires the later . . . ." (Italics added.)

of $33,912.50 is paid, because the First District recently held that a taxpayer who seeks a refund of taxes paid in partial satisfaction of a tax liability must seek refund within the limitations period of the applicable tax statute beginning on the date of such partial payment. (*Chahine* v. *State Bd. of Equalization* (1990) 222 Cal.App.3d 485, 490 [272 Cal.Rptr. 56].)

In *Chahine*, the taxpayer sought a refund in 1986 of amounts paid in installments between 1972 and 1985 toward satisfaction of tax liability assessed in a 1971 audit. (222 Cal.App.3d at p. 489.) The Court of Appeal held the taxpayer's claim for refund was subject to a statute of limitations in Revenue and Taxation Code section 6902, subdivision (a), providing in relevant part, " 'no refund shall be approved by the board . . . after six months from the date of the overpayment, . . . unless a claim therefor is filed with the board within such [limitations] period.' " (222 Cal.App.3d at p. 489.) Failure to file a timely claim constituted a waiver under Revenue and Taxation Code section 6905. (*Ibid.*) Thus, a taxpayer alleging overpayment was required to claim a refund within the time allowed following the alleged overpayment or lose the right to pursue the claim. (*Id.* at p. 490.) *Chahine* rejected the taxpayer's argument that because the *State Bd. of Equalization* case precluded court action until the tax liability for at least one reporting period was paid in full, the triggering event of "overpayment" in the statute of limitations should be construed to mean payment in full of a periodic liability. (*Id.* at p. 489.) *Chahine* concluded the policy of prompt tax collection would be frustrated by such a construction, because a "taxpayer could effectively defer timely payment in full of accrued quarterly taxes claimed due by making token partial payments only, while preserving indefinitely his administrative option to seek full refund of all such partial payments until he unilaterally chose to pay the deferred balance claimed due." (*Id.* at p. 490.)

In this appeal, no statute of limitations question is presented. However, the Unemployment Insurance Code contains similar limitations provisions to those considered in *Chahine*. Thus, section 1178, subdivision (b) (fn. 3, *ante*), provides that an administrative refund claim must be filed within certain time limits after an alleged overpayment. And section 1241, subdivision (a), makes a refund claim a precondition to court action and provides that "[f]ailure to bring action within the time specified [following denial of refund claim] constitutes a waiver of any demand against the state on account of alleged overpayments. . . ."

Thus, applying *Chahine* to this case, the limitations period for seeking a refund of the $548.23 (which the taxpayers allege is an overpayment) began to run upon payment of the $548.23. Yet we hold—as compelled by the statutes—that the taxpayers cannot seek refund of the $548.23 until they

fully pay the balance of the $33,912.50 assessment. Thus, when they pay the balance of the assessment and sue for a refund, they will be precluded from recovering the $548.23 because the statute of limitations will have expired as to the alleged overpayment of the $548.23.

The taxpayers claim this creates a "Catch-22" for taxpayers whose financial situation requires that they pay an assessment in installments rather than a lump sum: "If they file when each payment is made, their claims will be dismissed as premature. If they wait until they have paid the entire tax, their claims [for refund of the first installment payments] will be dismissed as too late."

However, the taxpayers could have avoided any "Catch-22" by making one full payment of the $33,912.50 assessment before seeking a refund. Moreover, even assuming financial inability to pay the entire multiple-reporting-period assessment in one lump sum, the asserted dilemma is no different than that of a taxpayer who is unable to make one lump sum payment of a single assessment for a single reporting period. Thus, the asserted dilemma is created not by our decision that the statutes require full payment of the assessment in this case but solely by the financial situation of the taxpayer and the absence of any statutory authorization allowing the taxpayer to hold open the statute of limitations on partial payments of an assessed tax liability.

We know of nothing prohibiting a financially strapped taxpayer from negotiating a partial payment plan with a stipulation by EDD to toll the statute of limitations. (See *Chahine, supra,* 222 Cal.App.3d at p. 490.) The Supreme Court has noted that "there may be sound equitable and practical reasons for the Board to accept partial payments. In some cases, the taxpayer may wish to make a partial payment to stop interest from accruing on at least a portion of his potential tax bill while redetermination proceedings are pending. In other cases, an installment plan may offer the best prospect for the taxing authority to collect the full amount without putting the taxpayer out of business." (*State Bd. of Equalization, supra,* 39 Cal.3d at p. 642.)

Nevertheless, assuming EDD would not agree to accept partial payments in exchange for a stipulation to toll the statute of limitations, the taxpayers have no recourse in this forum. "The argument that compliance with the statute may cause hardship in some instances is one which can be addressed only to the Legislature." (*Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 732 [192 P.2d 916] [severe financial hardship would not permit judicial intervention].)

We conclude the taxpayer's inability unilaterally to hold open the statute of limitations by making partial payments of an assessed tax liability does

not permit us to ignore the statutory requirement that full payment of the $33,912.50 assessment is a precondition to suit.

In view of our disposition, we see no materiality in the taxpayers' argument that they should be allowed to maintain this action because it would not interfere with EDD's collection of taxes for the other reporting periods covered by the assessment. It is also unnecessary to address EDD's argument that a full payment requirement is necessarily implied by provisions in section 1241, subdivisions (b) and (c), allowing religious organizations to challenge denial of an exemption upon payment of amounts assessed for one quarter.

We conclude the trial court properly granted EDD's motion for summary judgment.

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied May 21, 1992, and appellants' petition for review by the Supreme Court was denied July 16, 1992.