[Civ. No. 33232. First Dist., Div. Four. May 28, 1974.]

OWENS-CORNING FIBERGLAS CORPORATION,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Appellant.

Steinhart, Goldberg, Feigenbaum & Ladar and Marvin D. Morgenstein for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*– –Defendant appeals from judgment of the San Francisco Superior Court in favor of plaintiff.

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Questions Presented

1. The Board of Equalization may retain funds voluntarily deposited with it where it failed within the statutory period of limitations to issue notice of deficiency determination stating additional tax due.

2. Any error in the findings is immaterial.

## Record

This action is for refund of taxes voluntarily paid defendant by plaintiff. The case was tried on a stipulation of facts and nine exhibits supplementing the stipulation. Judgment was rendered in favor of plaintiff in the sum of $15,378.75.

## Facts

Plaintiff was and is a Delaware corporation licensed to do business in California, and a retailer within the meaning of the California Sales and Use Tax Law. Defendant is an agency of the State of California, authorized to administer and enforce the California Sales and Use Tax Law pursuant to section 6001 et seq., California Sales and Use Tax Law (Rev. & Tax. Code). Plaintiff delivered to defendant certain extensions of time within which a notice of deficiency determination of its "Santa Clara account" might be mailed by defendant, the final extension being to December 31, 1968, only. Plaintiff, on August 16, 1968, sent defendant a check for $65,000 pertaining to the accounts involved herein and other accounts "in advance payment of estimated liability, for the purpose of stopping the running of interest on this amount."

Over a period of time defendant mailed to plaintiff notices of determination of taxes due for certain of its accounts for certain periods. Plaintiff does not contest the accuracy of the amounts set forth in the notices of determination. It is the amounts claimed due in the notices of deficiency determination issued on January 16 and 17, 1969, that are involved in this case, plaintiff claiming that the extensions of the statutory period had expired before the notices of determination were issued.[1] Plaintiff claims that it is no longer liable for the delinquent taxes and is entitled to a return of that portion of the deposit withheld by defendant applying thereto.

[1] Section 6487 of the Revenue and Taxation Code prescribes a three-year limitation on the mailing of notices of deficiency determinations.

### 1. *Effect of Late Issue of Notice of Deficiency Determination*

■ As stated by plaintiff, "The sole issue in this appeal is whether the State Board of Equalization may retain funds voluntarily deposited with it even though it failed to issue, within the three-year statutory period of limitations, a Notice of Deficiency Determination stating the additional tax liability against which those funds were offset."

The record shows that at the time of the deposit of the $65,000 plaintiff's tax delinquency was in excess of that sum, and that (as the stipulation provides) "if there had been a valid extension through January 31, 1969, of the time within which notices of deficiency determination might be filed . . . the notices of determination issued on January 16 and 17, 1969 would have been timely issued." In such event plaintiff could not have claimed a refund.

Obviously a deficiency determination is a finding that there still is owing from the taxpayer a sum in excess of that shown in the return. The tax is due; it is merely a question of determining the amount. Revenue and Taxation Code section 6481 provides that the Board of Equalization "may compute and determine the amount required to be paid upon the basis of . . . any information . . . that may come into its possession." As said in *People* v. *Buckles* (1943) 57 Cal.App.2d 76, 80 [134 P.2d 8], concerning additional assessments of taxes under the Retail Sales Act, "such so-called assessments are merely a determination by the board of the amounts that the retailer has failed to pay" and do not "create a new obligation or liability."

In the case at bench the board merely determined that after the $65,000 payment there still remained a balance on plaintiff's tax accounts which it had failed to pay.

In *Mudd* v. *McColgan* (1947) 30 Cal.2d 463 [183 P.2d 10], the court was dealing with the deficiency assessment of the plaintiff's personal income taxes. Section 19 of the then Personal Income Tax Law (now Rev. & Tax. Code, § 18586) required mailing of notices of deficiency assessments prior to the expiration of the three-year period. The court held that the time provision of that section was a statute of limitations as to enforcement and not (as the taxpayer there contended and as plaintiff here contends with reference to the sales tax) a condition precedent to the exercise of a right. The court said (p. 467), "The plaintiff's liability to pay the deficiency tax is not a liability created by section 19. . . . [I]t may not be questioned that the plaintiff's total tax liability for 1936, *including any deficiency,* is

governed by the statutory measure applicable to that year. His liability *for a deficiency is part and parcel of his liability for the total tax.* In fact, the word 'deficiency' negatives any concept of a new or distinct liability. On the contrary, implicit therein is its relationship to the total tax. The basis of the plaintiff's total tax was a correct computation of net income. *The tax became due upon the filing of the return. Any portion thereof not discharged was chargeable to and collectible from the plaintiff as a deficiency.* These considerations render inconceivable any theory that the liability to pay a deficiency tax is other than a continuing liability, based on net income correctly reported, and which is not discharged upon payment of a tax determined from incorrectly reported net income. The plaintiff's duty to discharge the unpaid amount of the total tax continued as a liability to pay the deficiency tax." (Italics added.)

Thus, at the time of the deposit, plaintiff's tax liabilities due and payable exceeded $65,000. Pursuant to plaintiff's request its $65,000 payment was applied to the on-going liability to stop "the running of interest on this amount." Plaintiff recognized that interest was then running on the difference between $65,000 and the amount it then owed (although that amount had not officially been determined).

The board has recognized the bar of the statute of limitations as to any amounts due over and above those paid for by the $65,000. But the board properly refuses to refund any moneys applied to plaintiff's indebtedness.

Applicable here is the statement in *Lewis* v. *Reynolds* (1932) 284 U.S. 281, 283 [76 L.Ed. 293, 294, 52 S.Ct. 145], where, after an initial assessment had been paid, a claim for refund was filed and the statute of limitations for enforcement had lapsed. The federal Commissioner of Internal Revenue was allowed to recompute the tax liability, arriving at a greater liability than before by denying a deduction previously allowed. "Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

*Marchica* v. *State Board of Equalization* (1951) 107 Cal.App.2d 501 [237 P.2d 725], a sales tax case, is not in point as the issue was not the same as in the instant case. There, when a notice of deficiency determination was issued after the statute of limitations for deficiency notices had run, the taxpayer filed a petition for redetermination. The board made no

change in its findings. The taxpayer then paid under protest in order to utilize the statutory procedure for gaining administrative and court review of his claim. The court's ruling was that "[t]he Sales Tax Act prevents the retention of *a tax paid after it is barred by the statute of limitations* . . ." (*Id.*, p. 509. Italics added.) In our case the board applied the payment by defendant to the tax due long before the statute of limitations would have prevented a recovery by the board had not such payment been made. It is true, as contended by defendant at some length, that the right to a refund in a proper case exists whether the payment was voluntarily or involuntarily made. However, this is not a proper case for a refund, as the payment was made on account of taxes then due but the exact amount of which had not been determined.

*Northrop Aircraft* v. *Cal. Emp. etc. Com.* (1948) 32 Cal.2d 872 [198 P.2d 898], is not in point here. It involved contributions under the California Unemployment Insurance Act. The Unemployment Commission was required to furnish each employer with an annual statement showing its contribution rate for the coming year. That rate could be amended by the commission only if notice of the proposed amendment was given and a hearing held in the year for which the rate was sought to be amended. On December 29, 1943, the commission sought to amend the contribution rate for 1943 to correct an error of its own, but the amendment could not be effective because a hearing on it could not be held that year. Northrop, as a means of utilizing the statutory procedure for gaining administrative and court review of its claim of invalidity of the assessment, paid under protest the contribution required of it under the illegal amendment and then sued the commission for a refund. This was not a situation where a payment was made on account of tax then due, but one in which the assessment was improper from its beginning and the payment was made in protest and only for the purpose of the payor's being able under the rules to establish the illegality of the assessment.

## 2. *Findings*

Defendant contends that most of the findings are not supported by the evidence as set forth in the stipulation and exhibits and points out that, as there is no conflict in the evidence, this court under the well known rule is not bound by the trial court's findings and conclusions therefrom and is free to draw its own conclusions from the record. (*Marble Mortgage Co.* v. *Franchise Tax Bd.* (1966) 241 Cal.App.2d 26, 35 [50 Cal.Rptr. 345].) The findings to which objection is made would be material if plaintiff were

entitled to a refund as they deal primarily with the amount of the refund to which plaintiff would be entitled, but in view of our holding that it is not so entitled, they are immaterial. The findings clearly show that the deficiency tax due from plaintiff at the time of the payment of the $65,000 was in excess of that amount; exactly how much need not be determined.

Judgment reversed.

Caldecott, P. J., and Rattigan, J., concurred.