[No. A067452. First Dist., Div. Five. Dec. 8, 1995.]

SPRINT COMMUNICATIONS COMPANY L.P., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

1256

COUNSEL

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant.

Richard N. Wiley for Plaintiff and Respondent.

OPINION

PETERSON, P. J.—On this appeal we hold that: (1) the State Board of Equalization (Board) may set off, against a taxpayer's timely claim for refund of overpayment of use taxes, all time-barred (but otherwise valid) underpayments of use taxes on other transactions which were not made during the same period for which refund is claimed; (2) a taxpayer's agreement extending the Board's statutory time to mail notice of use tax deficiencies for the period encompassing both its refund claim period and a stated additional period does not subject that taxpayer's overpayment refunds to setoff for underpayment of time-barred (but otherwise valid) use taxes occurring thereafter.

I. FACTS AND PROCEDURAL BACKGROUND

The Board appeals from a judgment awarding Sprint Communications Company L.P. (Sprint) $197,450.25 in its action for refund of use taxes. (Rev. & Tax. Code,[1] § 6933.) Sprint overpaid use taxes on property it purchased for use outside California; and on April 20, 1990, Sprint filed a claim, conceded to be timely, for refund of those overpayments. The Board conducted an audit on this claim. While the audit was pending, Sprint and the Board executed two waiver agreements to extend the Board's time to mail notices of deficiency determinations to Sprint as required by section 6487.[2] We will hereafter deal with issues affected by the following three periods:

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Revenue and Taxation Code.

A "use tax" is one imposed on the "storage, use, or other consumption in this state of tangible personal property purchased from any retailer . . . , for storage, use, or other consumption *in this state* . . ." at a specified percentage of the purchase price. (§ 6201, italics added.)

[2] Section 6487, subdivision (a) provides, as here pertinent with respect to use taxpayers (such as Sprint) filing use tax returns on a nonannual basis, as follows: "[E]very notice of a deficiency determination shall be mailed within three years after the last day of the calendar month *following the quarterly period for which the amount is proposed to be determined* . . . ." (Italics added.)

(1) The refund claim period. Sprint's refund claim was for its overpayments of use tax in the fourth quarter of 1986 through the third quarter of 1988 (Oct. 1, 1986, through Sept. 30, 1988).

(2) The extension periods. The initial waiver agreement *added* the last quarter of 1988 (Oct. 1, 1988, through Dec. 31, 1988) (first extension period) to the period to be audited by the Board, and *extended* the Board's time to mail Sprint a notice of deficiency covering the refund claim period and the first extension period. Before the first extension period expired, the second waiver agreement *added* the first two quarters of 1989 (Jan. 1, 1989, through June 30, 1989) (second extension period) to the period to be audited by the Board, and once again *extended* the Board's time to mail Sprint a notice of deficiency determination through October 31, 1992, covering the entire time commencing with the first quarter of Sprint's refund claim period (beginning Oct. 1, 1986) through all extension periods (ending June 30, 1989).

(3) The nonwaived period. The Board then, without further agreement from Sprint, included in its audit the third quarter of 1989 (July 1, 1989, through Sept. 30, 1989). Sprint never extended the time for filing a notice of deficiency determination for the nonwaived period. The three-year period in which to do so expired prior to November 20, 1992, the day the Board finally mailed its notice of deficiency/refund determination to Sprint for the entire period of the audit it made (Oct. 1, 1986, through Sept. 30, 1989).

The Board, thus, mailed an untimely notice of deficiency determination beyond the last stipulated extension date therefor of October 31, 1992, for all quarters except the third quarter of 1989 (the nonwaived period). As to that last quarter of its audit (July 1, 1989, through Sept. 30, 1989), the notice was mailed after the period permitted by section 6487—within three years after October 31, 1989.

In summary:

(1) The Board approved overpayment refunds to Sprint totaling approximately $744,000 for the refund claim period, and set off against that sum time-barred but otherwise valid claims of about $230,000 for use tax underpayment on other transactions in the same period (Oct. 1, 1986, through Sept. 30, 1988).

(2) The Board found Sprint had overpaid its use tax for the first and second extension periods without any setoff of time-barred tax underpayments occurring during those periods (Oct. 1, 1988, through June 30, 1989) and credited those overpayments to Sprint.

(3)   The Board found Sprint had underpaid its use tax by $13,955.26 and had made no overpayments in the nonwaived period (July 1, 1989, through Sept. 30, 1989); the Board set off that underpayment of $13,955.26 against the total refunds due Sprint for the refund claim period.

(4)   All use tax deficiencies credited by the Board against Sprint's refund claims were unenforceable under the limiting provisions of section 6487. They totaled $243,972.11.

As framed by the pleadings, the legal issue presented was "whether the Board may retain amounts erroneously paid by Sprint on account of tax exempt purchases, and apply those amounts to tax deficiencies on other transactions after the time for enforcing those deficiencies has expired." Sprint concedes that the tax deficiencies would have been properly assessed if the three-year statute of limitations for giving notice, as extended by agreement, had not run. (§ 6487.) Sprint's principal contention, however, is that the running of the statute of limitations, as extended by the waiver agreements, proscribes the Board's power to set off the deficiencies against the refund. We review this issue de novo. (*Heller* v. *Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1735 [27 Cal.Rptr.2d 88].)

II.   Discussion

A.   *Equitable Setoff of Time-barred Use Tax Underpayments Not Made During the Taxpayer's Refund Claim Period*

■   Sprint's claim is predominately directed to the Board's setoff of underpayments of use taxes which occurred during the refund claim period, and we deal first with this issue. The context in which this dispute arises—a taxpayer's suit for refund of taxes—is extremely important to its resolution. ■   "[S]ince a suit for a refund of taxes is governed by equitable principles, a plaintiff who challenges the validity of a tax may recover only if it be shown that more has been exacted than in equity and good conscience should have been paid." (*Goodwill Industries* v. *County of L. A.* (1953) 117 Cal.App.2d 19, 27 [254 P.2d 877]; *Northrop Aircraft* v. *Cal. Emp. etc. Com.* (1948) 32 Cal.2d 872, 879 [198 P.2d 898] (*Northrop*); *Pacific Fruit Express Co.* v. *McColgan* (1944) 67 Cal.App.2d 93, 96-97 [153 P.2d 607].) The equitable principles underlying a refund action "limit recovery to the difference between the tax actually paid and that which properly *should* have been exacted, and . . . prevent recovery if the taxpayer paid only his fair and just proportion of taxes." (*Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 316 [217 P.2d 936], italics added (*Simms*).)

■   In making the equitable determination of whether the taxes paid were in excess of the amount due, the Board is not confined to the isolated

transactions on which the taxpayer's refund claim is based. As our Supreme Court recently explained in *Title Ins. Co.* v. *State Bd. of Equalization* (1992) 4 Cal.4th 715, 732 [14 Cal.Rptr.2d 822, 842 P.2d 121] (*Title Ins. Co.*): "[A] refund case *throws open the taxpayer's entire tax liability for the period in question* [citation], and the Board *may raise issues unrelated to the basis or theory on which the taxpayer is seeking a refund* in order to defeat the claim." (Italics added.) In other words, while a taxpayer's refund claim might be proper, there might be other items which the taxpayer omitted from its return for that year, which if included would show that the taxpayer had underpaid its tax. (*Pope Estate Co.* v. *Johnson* (1941) 43 Cal.App.2d 170, 173 [110 P.2d 481] (*Pope Estate*).) ▆▆▆ Thus, in the present case, the Board was compelled to raise all claims concerning unpaid use taxes for the timeframe encompassed in the refund claim period which might be set off against Sprint's refund claim, or forego the right to collect any taxes for that period. (*State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 641 [217 Cal.Rptr. 238, 703 P.2d 1131].)

There is no statutory basis for permitting the Board to set off a tax deficiency against the refund due Sprint after the statute of limitations has expired. However, in *Lewis* v. *Reynolds* (1932) 284 U.S. 281 [76 L.Ed. 293, 52 S.Ct. 145] (*Lewis*), the United States Supreme Court recognized such a recovery based upon the broad equitable principle that a taxpayer is not entitled to a refund unless it has, in fact, overpaid its taxes. The specific issue before the court in *Lewis* was identical to the issue before us—whether in recalculating the ultimate tax due, the taxing authority could credit the taxpayer's refund by a deficiency that was uncollectible because of the expiration of the applicable statute of limitations. While it was undisputed the taxing authority could not collect additional tax based on the time-barred deficiency, the court held it could use the deficiency for the purpose of reducing the taxpayer's refund claim. The Supreme Court reasoned: "An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." (*Id.* at p. 283 [76 L.Ed. at p. 295].)

The principles espoused in *Lewis* have found widespread acceptance.[3] Nevertheless, Sprint contends the reasoning set out by *Lewis* does not apply

---

[3]Accord, *Allen* v. *U.S.* (11th Cir. 1995) 51 F.3d 1012 (The Internal Revenue Service could properly impose delinquency penalties as an offset, irrespective of whether the statute of limitations had run.); *Allstate Ins. Co.* v. *United States* (1977) 550 F.2d 629, 634, footnote 6

in California. It contends that where, as here, the setoff derives from a time-barred tax determination, the statutory authorization for taxpayer recoupment of taxes "illegally determined" serves to defeat the Board's ability to use this deficiency as a proper setoff. (§ 6932.)

Sprint's assertion that *Lewis* does not apply in California is questionable given the language contained in *Pope Estate, supra,* 43 Cal.App.2d at page 173. In noting that the taxing authority can counter a taxpayer's refund claim by showing a deficiency on "other items which the taxpayer had omitted from its return for that year," the court goes on to state: "This is so *even though the claimed deficiency . . . was barred by the statute of limitations.*" (*Ibid.,* italics added.) *Pope Estate* cites *Lewis* as the authority for this proposition. (See also *Northrop, supra,* 32 Cal.2d at p. 880.)

Moreover, the reasoning in *Owens-Corning Fiberglas Corp.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 532 [114 Cal.Rptr. 515] (*Owens-Corning*) cannot be reconciled with Sprint's position in this case. In *Owens-Corning,* the taxpayer sought a refund of sales and use taxes on the ground that the Board failed to issue a notice of deficiency within the same three-year statutory period which is applicable to the instant case. (§ 6487.) However, before bringing the refund action, the taxpayer had deposited funds with the Board in advance payment of its estimated tax liability for the purpose of stopping the running of interest on the amount due, which was then undetermined. The taxpayer did not dispute that the taxes were properly owed but, relying on the untimely notice of deficiency, argued "that it is no longer liable for the delinquent taxes and is entitled to a return of that portion of the deposit . . . ." (*Owens-Corning, supra,* 39 Cal.App.3d at p. 534.) The case was tried on a stipulation of facts, and judgment was rendered in favor of the taxpayer.

---

[213 Ct.Cl. 96] ("While the Government may be time-barred from asserting a deficiency against the taxpayer, it may surely counter a timely refund claim with the subject of the deficiency to illustrate that *as a whole,* the taxpayer is not entitled to a refund." (Italics in original.)); *Dynamics Corporation of America* v. *United States* (1968) 392 F.2d 241, 249 [183 Ct.Cl. 101] ("It is clear that, although the statute of limitations may act to effectively bar the Commissioner from assessing a deficiency for a past year, it does not prohibit him from correctly recomputing tax liability for that year and using his corrected figures to offset a timely refund claim."); *Dysart* v. *United States* (1965) 340 F.2d 624, 628 [169 Ct.Cl. 276] (Even outside the limitations period, a refund suit opens up the taxpayer's entire tax liability for redetermination, for only "if the overall balance moves his way can he recover."); *Cuba Railroad Co.* v. *United States* (2d Cir. 1958) 254 F.2d 280, 282 (Even after the statute of limitations runs, "when the taxpayer seeks a refund for a credit mistakenly denied, he must be content to allow his tax for the same year to be corrected because of errors through which he has profited."); *United States* v. *Pfister* (8th Cir. 1953) 205 F.2d 538, 542 (Outside the limitations period, "The validity of any deduction claimed by the taxpayer in his income tax return is inevitably in issue in his action to recover alleged overpayments of income tax.").

The Court of Appeal reversed. In doing so, it quoted that portion of *Lewis* stating, "Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." (284 U.S. at p. 283 [76 L.Ed. at p. 295]; *Owens-Corning, supra,* 39 Cal.App.3d at p. 536.)

Sprint stresses certain factual differences between the instant case and *Owens-Corning,* but it cannot escape its result: When a taxpayer files a use tax refund claim for a stated period, the running of the statute of limitations does not abrogate the Board's power to set off, against any refund due, that taxpayer's time-barred underpayments of use tax for the same period. The rationale supporting this result was derived from *Lewis* and sweeps broadly to permit a new assessment of the entire tax liability for purposes of making an equitable determination of whether there has been a net overpayment of tax by the taxpayer.[4]

In arguing that California prohibits the Board from crediting Sprint's refund by the amount of the time-barred deficiency, Sprint relies upon *Marchica* v. *State Board of Equalization* (1951) 107 Cal.App.2d 501 [237 P.2d 725] (*Marchica*) and *Northrop, supra,* 32 Cal.2d 872. These cases were extensively discussed and found inapplicable in *Owens-Corning* for the very reasons we find them unpersuasive. (39 Cal.App.3d at pp. 536-537.) In each of these cases, the taxpayer had paid the tax under compulsion of law solely for the purpose of obtaining judicial review of the legality of the tax assessment. (*Marchica, supra,* 107 Cal.App.2d at pp. 503, 509; *Northrop, supra,* 32 Cal.2d at p. 875.) In such a case, because each of the taxpayers would have had no remedy unless payment was deposited, we agree it would be inequitable to allow the taxing authority to keep the funds upon finding the taxpayer's argument was meritorious. (*Marchica, supra,* 107 Cal.App.2d at p. 513; *Northrop, supra,* 32 Cal.2d at p. 881.)

Sprint has not presented the type of unique facts that were involved in *Marchica* and *Northrop* for disallowing recovery of taxes rightfully owed. This is not a separate action brought for refund of these time-barred taxes, where the tax is paid under protest after the statute of limitations has run

---

[4]We also note that in *Owens-Corning,* as in the instant case, the Board had the opportunity to calculate the correct tax within the limitations period but, for unspecified reasons, delayed issuing the notice of deficiency until shortly after the limitations period had run. (39 Cal.App.3d at p. 534.) While Sprint argues that this unjustified delay should deprive the Board of the right to invoke the doctrine of equitable setoff, we note that this factor did not deter the court in *Owens-Corning* from allowing the setoff to be asserted.

solely for the purpose of challenging the assessment. By contrast, in our case, the Board's setoff claim flows from a complete reassessment of Sprint's underlying tax liability, which in turn allows the Board to retain any tax payment in its possession "which might have been properly assessed and demanded." (*Lewis, supra,* 284 U.S. at p. 283 [76 L.Ed. at p. 295].)

### B. *The Timeframe for Determining Setoff of Use Tax Deficiencies Against Refund Claims*

Sprint contends that *even if* the doctrine of equitable setoff is recognized in California, the "equitable doctrine applies only when the payment sought to be retained by the government was made on account of the same transaction as the time-barred determination . . . ." Sprint notes that in our case the refund and setoff involve different use tax transactions that were independent of one another; i.e., that in determining what timeframe constitutes the same period for offsetting deficiencies against overpayments, each quarterly period must be viewed in isolation. Specifically, Sprint argues that if setoff is to be allowed, then any deficiency in excess of the refund for any given quarter cannot be aggregated and set off against any other quarterly refund or the total refund due. This would mean, for example, that when the Board determined that in the first quarter of 1987 Sprint had overpaid its taxes by $19,114.04, the Board could not recoup the entire $42,034.54 in time-barred deficiencies found for that same quarter by taking the $22,920.50 balance and applying it against Sprint's refund for another quarter. Literally applied, Sprint's argument would mean the remaining $22,920.50 deficiency assessment for the first quarter of 1987, as well as one of $30,671.72 similarly remaining in the fourth quarter of 1987, would simply lapse, reducing Sprint's overall tax liability, while Sprint would be entitled to secure a refund representing the aggregated quarterly refund totals. We cannot sanction this inequitable avoidance of time-barred use taxes indisputably owed when " 'the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax.' " (*Lewis, supra,* 284 U.S. at p. 283 [76 L.Ed. at p. 295].)

We recognize that a claim for refund does not "invite a search of the taxpayer's entire tax history for items to recoup." (*Rothensies* v. *Electric Battery Co.* (1946) 329 U.S. 296, 302 [91 L.Ed. 296, 301, 67 S.Ct. 271] (*Rothensies*).) This view is supported by our Supreme Court's holding that a refund claim "throws open the taxpayer's entire tax liability *for the period in question,*" and allows the Board to defeat the taxpayer's claim by raising "issues unrelated to the basis or theory on which the taxpayer is seeking a refund . . . ." (*Title Ins. Co., supra,* 4 Cal.4th at p. 732, italics added; *Pope Estate, supra,* 43 Cal.App.2d at p. 174.)

The doctrine of equitable setoff is not, as Sprint urges, limited to a single taxable event measured by a quarterly use tax return, requiring that the claim for refund and the setoff both originate in that same transaction. The support Sprint urges for a narrower or stricter interpretation of "same transaction" is inapposite; it involves the doctrine of equitable recoupment as opposed to equitable setoff.[5] (See, e.g., *Rothensies, supra,* 329 U.S. at p. 299 [91 L.Ed. at p. 299].)

The Board could properly credit and set off underpayment of taxes barred by the statute of limitations in one quarter against an overpayment of taxes in another quarter, so long as both setoffs and overpayments occurred during the period put at issue by the taxpayer's refund request. The rule that "he who seeks equity must do equity" applies to a taxpayer's claim for refund. (*Simms, supra,* 35 Cal.2d at p. 316; *El Tejon Cattle Co.* v. *County of San Diego* (1967) 252 Cal.App.2d 449, 462 [60 Cal.Rptr. 586].) Sprint, "seek[ing] equity" by requesting a refund of taxes, must be prepared to "do equity" by allowing its tax liability for the same period to be corrected because of errors through which it has profited.

C. *Setoff of Time-barred Use Tax Underpayments Made After Expiration of the Taxpayer's Refund Claim Period and Any Successive Periods for Which the Taxpayer Waived the Notice of Deficiency Requirements of Section 6487*

No direct dispute exists because of the use tax refunds paid Sprint for the first and second extension periods (Oct. 1, 1988, through June 30, 1989). Sprint does, however, dispute the Board's setoff, against Sprint's refund claim, of the amount of $13,955.26 as underpaid use tax due for the nonwaived period (July 1, 1989, through Sept. 30, 1989).

We need not decide here the question of whether Sprint's express agreement that the first and second extension periods could be audited by the Board, and/or its acceptance of refunds of overpayments made during such periods, exposed its refund claim to setoff for underpayments occurring

---

[5]Where the taxing authority makes a timely assessment on the taxpayer, who attempts to counter it with a refund claim barred by the statute of limitations, courts generally apply a different rule based upon principles of equitable recoupment. This rule only allows the taxpayer to set off taxes previously paid on the same transaction. (See *Bull* v. *United States* (1935) 295 U.S. 247, 262 [79 L.Ed. 1421, 1428-1429, 55 S.Ct. 695]; but see § 6483 allowing the Board to offset overpayments "for a period or periods" against a deficiency.)

during those extension periods. No such underpayments were found due by the Board.[6]

█ Implicit in Sprint's claim on appeal, however, is the issue of whether its underpaid and time-barred use tax for the nonwaived period (July 1, 1989, through Sept. 30, 1989) could equitably be offset against its use tax refund, since that period was not included in either Sprint's refund claim or the first or second extension periods. We think not.

Sprint's waivers of the provisions of section 6487, extending the Board's statutory time for filing a notice of deficiency determination as to the refund claim period and the extension periods, were ineffective after June 30, 1989.

It appears the Board probably audited the nonwaived period in the belief it could complete that audit by October 31, 1992, the statutory deadline for mailing a deficiency notice for that period, coinciding with the stipulated date on which its notice of deficiency determination for the refund claim period and the extension periods had to be mailed. It failed to meet that deadline, mailing no such notice for any period in question here until November 20, 1992.

This nonwaived period was the subject neither of Sprint's original refund claim nor of Sprint's agreements concerning the extension periods.

Thus, that nonwaived period cannot be deemed to be part of the "period in question" for which the taxpayer seeks a refund (*Title Ins. Co., supra,* 4 Cal.4th at p. 732), so as to trigger the Board's authority derived from the equitable principles we have discussed, to set off time-barred use tax underpayments against use tax refunds concededly due for the refund claim period and both extension periods. The offset of $13,955.26 cannot be upheld.

III.  DISPOSITION

The judgment is modified to award a refund to Sprint of *only* the amount of setoff for underpayment of use taxes for the period of July 1, 1989,

---

[6]Had there been such a finding, it is difficult to see why the same equitable setoff principles applicable to the refund claim period would not be applicable to the first and second extension periods. Otherwise, the taxpayer could agree to expand the period of audit triggered by its refund request and, while freely accepting any refunds, evade all equitable offsets of time-barred tax deficiencies found due in that expanded period, solely because they arose from an audit period voluntarily extended outside the period for which a refund was initially claimed.

through September 30, 1989 (the nonwaived period) in the amount of $13,955.26, together with any legally accrued interest thereon; and *as so modified* is affirmed. Each party shall bear its own costs on appeal.

King, J., and Haning, J., concurred.