[No. B175952. Second Dist., Div. One. Feb. 9, 2006.]

TONY JIBILIAN et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

Counsel

Law Offices of Tabone and Derek L. Tabone for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, W. Dean Freeman and Elisa B. Wolfe-Donato, Deputy Attorneys General, for Defendant and Respondent.

Opinion

**MALLANO, Acting P. J.**—Tony and Dorothy Jibilian appeal from a judgment dismissing their second amended complaint for a tax refund after the trial court sustained the demurrer of defendant Franchise Tax Board (FTB). We affirm the judgment because the Jibilians' wages are taxable and FTB was not required to follow deficiency assessment procedures in order to deny a refund of taxes paid.

## BACKGROUND[1]

The Jibilians, who describe themselves as "citizens" of the State of California, filed state income tax returns for the years 1999, 2000, and 2001 and paid taxes for those years of $61,542, $56,730, and $90,470, respectively. Notwithstanding their payment of estimated taxes of $75,000 for 2002, they filed a state income tax return for 2002 claiming that the tax owed for that year was zero. The Jibilians asserted that the 2002 return was "a reflection of the Federal [income tax] return filed for the same year, which resulted in a full federal refund of $315,000." FTB deemed the 2002 return to be frivolous and requested a valid return. The Jibilians then filed an amended return, "which was slightly modified with the same amount of tax owed shown to be $0.00." The Jibilians considered the return to constitute a request for a refund for the alleged overpayment of $75,000. FTB did not pay the refund. The Jibilians filed amended state income tax returns for the years 1999, 2000, and 2001. The amended returns requested refunds for all taxes paid for those years, but FTB did not pay the requested refunds.

After two demurrers to their complaints were sustained, the Jibilians filed a second amended complaint asserting the following grounds for the claim that

---

[1] Because a demurrer tests the sufficiency of a complaint by raising questions of law, on review of a ruling on a demurrer, we assume the truth of the allegations in the complaint but not conclusions of fact or law. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204].) The allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint, and in the event of a conflict between the pleading and an exhibit, the facts contained in the exhibit take precedence over and supersede any inconsistent or contrary allegations in the pleading. (*Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409 [19 Cal.Rptr.3d 562].)

they had no tax liability for the years 1999 through 2002: (1) Whether or not they earned any income, they are not "within the class of people" required to pay income tax under federal or state law. (2) They are not "taxpayers" within the meaning of the Internal Revenue Code, title 26 of the United States Code, or the California Revenue and Taxation Code and have no obligation to file returns or pay a tax based on income. (3) They had no taxable income for federal or state purposes because their earnings were not "gain from capital, labor or both." (4) Their earnings were not includable as gross income under section 861 of the Internal Revenue Code (section 861) and regulations thereunder. (5) No tax is owed because FTB has not made any assessment against them. (6) Because they have no taxable income for federal purposes, they also have no taxable income under the California statutory scheme.

The Jibilians did not attach their returns or amended returns as exhibits to the complaint. But they attached two five-page letters FTB sent to the Jibilians in March 2003 and their reply letter. The letters from FTB stated that FTB was denying the refund requests for the years 1999 through 2001 because it deemed the amended tax returns to be "frivolous and/or invalid." FTB explained that a return may be deemed frivolous if it indicates on its face that the tax self-assessment is substantially incorrect and is due to a position that is frivolous or a desire to impede or delay the administration of the income tax laws.

FTB's letters also stated that "[a]ttempts to portray oneself as a 'nontax-payer,' 'sovereign citizen,' or 'freeborn and natural individual' with immunity from taxation lack legal support, and are ineffective claims against the proper assessment and collection of taxes." FTB further asserted that "[s]ection 861 and its implementing regulations do not apply to the determination of taxable income under California law. California is not concerned with whether the income of a California resident is from a source within or without the United States—it is all subject to California personal income tax. (See Rev. & Tax. Code, § 17041.) [¶] The attempts to use [section] 861 and its implementing regulations to exclude income of an individual while living and working within the United States, or attempts to apply [section] 861 and its implementing regulations to income for California personal income tax purposes are 'groundless and frivolous contentions of the kind being sold by charlatans to both unsuspecting taxpayers and those willing to be duped.' "

In the Jibilians' April 2003 reply letter to FTB, they admitted that their amended returns for 1999, 2000, and 2001 contained all zeros, but "[i]f the law says we have zero income then how would we go about filing without it being deemed frivolous? Zero is a valid number and 0 + 0 = 0 . . . . These are valid calculations. For us to provide any other numbers based on the current

income tax laws would be a fabrication. A zero return is a legal return . . . . Our return cannot therefore be considered frivolous or invalid using this position."

FTB demurred to the complaint on the ground that it failed to state facts establishing any viable ground for the requested tax refunds, a necessary element of the Jibilians' cause of action. FTB maintained that none of the six grounds set forth in the complaint constituted a valid, legally recognized ground for a tax refund. In opposition to the demurrer, the Jibilians argued that the pleading was sufficient to justify relief and that their entitlement to a refund should be determined by trial and not by demurrer.

In its reply memorandum, FTB pointed out that the opposition to the demurrer specifically addressed only grounds (3), (4), and (5). FTB deemed the Jibilians to have abandoned grounds (1), (2), and (6).

At the hearing on the demurrer, the Jibilians' attorney stated that "in a nutshell" the section 861 argument is that "wages [of United States citizens] from private employment inside the U.S. [are] not [taxable]." After the hearing, the court sustained the demurrer without leave to amend the complaint. The Jibilians appeal from the order of dismissal.[2]

## DISCUSSION

The Jibilians contend that they have pleaded an adequate legal basis for their refund claims.

Notwithstanding their assertion that they do not intend to abandon or waive any of the six grounds for a refund set forth in the complaint,[3] the Jibilians nevertheless failed to provide pertinent authority supporting grounds (1), (2),

---

[2] According to FTB's respondent's brief, in June 2005, pending this appeal, Tony Jibilian's suit seeking a federal tax refund for the years 1999 through 2001 in the United States Court of Federal Claims was dismissed for failure to state a claim. (*Jibilian v. United States* (Ct.Cl. 2005) 2005-2 U.S. Tax Cas. (CCH) ¶ 50.656.)

[3] The Jibilians' opening brief states: "By discussion of a few of the grounds raised in the [complaint] Plaintiffs do not mean to abandon, diminish or waive the others. Each is a viable ground for the relief requested, but it is not the merits of the grounds that are placed in issue by a demurrer. The only issue raised by a demurrer is the sufficiency of Plaintiffs' allegations on the face of the complaint. The trial court simply erred in considering anything else."

But the Jibilians cite no authority to support their assertion that on a demurrer either we or the trial court are required to accept as true erroneous or unsupported legal theories or contentions. On the contrary, in reviewing a ruling on a demurrer, we disregard any erroneous legal conclusions stated by the plaintiff. (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 219 [86 Cal.Rptr.2d 209].) And because it is not our role to construct theories or arguments that would undermine the judgment, we consider only those issues advanced in the appellant's briefs. (*Ibid.*)

and (6) in the trial court, and fail to do so here. Accordingly, we deem the Jibilians to have abandoned these three grounds. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1829 [25 Cal.Rptr.2d 716] [appellant's burden is to demonstrate the trial court erred in sustaining the demurrer]; *Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532, 537 [25 Cal.Rptr.3d 617] [when an issue is unsupported by pertinent or cognizable legal argument, it may be deemed abandoned].)

The Jibilians also fail to establish that grounds (3), (4), and (5) constitute viable claims for tax refunds.

■ In ground (3), the Jibilians contend that their wages from private employment were not taxable because the wages were not "gain from capital, labor, or both." Revenue and Taxation Code section 17041, subdivision (a) imposes a tax "upon the entire taxable income of every resident of this state . . . ." Pursuant to Revenue and Taxation Code section 17071, California defines gross income as it is defined by section 61 of the Internal Revenue Code (26 U.S.C. § 61). Under 26 United States Code section 61, "income" is defined according to its everyday usage as any gain derived from capital, labor, or both combined. (See *United States v. Richards* (8th Cir. 1983) 723 F.2d 646, 648.) In addition, 26 U.S.C. § 61(a) defines "gross income," from which taxable income is computed, as including compensation for services or wages. (*Charczuk v. C.I.R.* (10th Cir. 1985) 771 F.2d 471, 473.) Thus, wages are "gain from capital, labor, or both." Accordingly, the claim that the Jibilians' wages from private employment in the United States do not constitute taxable income is without merit.

■ The Jibilians' argument with respect to ground (4) is that wages of United States citizens from private employment *inside* the United States are not taxable under section 861. Although the source of income (whether within or outside the United States) may be a consideration in determining a *nonresident alien's* tax liability under federal law (*Valentino v. Franchise Tax Bd.* (2001) 87 Cal.App.4th 1284, 1294 [105 Cal.Rptr.2d 304]), the "determination of where income is derived or 'sourced' is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under [Internal Revenue Code sections] 1 and . . . 11, respectively, on their *worldwide income.*" (*Great-West Life Assur. Co. v. United States* (Ct.Cl. 1982) 230 Ct.Cl. 477 [678 F.2d 180, 183], italics added.) Accordingly, assuming for the sake of argument that California has adopted the principles of federal law set out in section 861, that provision does not establish a viable ground for the Jibilians' claim for a tax refund.

In ground (5), the Jibilians maintain that they are entitled to a refund because, according to their amended returns for 1999 through 2001 and their

2002 original and amended returns, their tax liability is zero, and in order for FTB to *retain* their tax payments or estimated tax payments, FTB was required to follow the deficiency assessment procedures in Revenue and Taxation Code section 19033, and it failed to do so.[4] In essence, the Jibilians contend that taxes or estimated tax payments may not be *retained* by the government when the taxpayer files an original or amended tax return asserting no tax liability unless the government follows the deficiency assessment procedures. Thus, without citing pertinent authority, the Jibilians maintain that the government was required to follow the deficiency assessment procedures even though it was not seeking to assess or collect any further taxes from them. Again, we disagree.

■ The procedure urged by the Jibilians would constitute a meaningless gesture in the context of their refund suit. Because a suit for a refund of taxes is governed by equitable principles, a taxpayer challenging the validity of a tax may recover only if it is shown " 'that more has been exacted than in equity and good conscience should have been paid.' " (*Sprint Communications Co. v. State Bd. of Equalization* (1995) 40 Cal.App.4th 1254, 1259 [47 Cal.Rptr.2d 399].) "The equitable principles underlying a refund action 'limit recovery to the difference between the tax actually paid and that which properly *should* have been exacted, and . . . prevent recovery if the taxpayer paid only his fair and just proportion of taxes.' " (*Ibid.*) Thus, a refund suit throws open the taxpayer's entire tax liability for the period or periods in question. (*Title Ins. Co. v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 732 [14 Cal.Rptr.2d 822, 842 P.2d 121].) Because the Jibilians have already placed their tax liability in issue by filing a refund suit, and because FTB is not seeking any tax deficiencies, a requirement that the government simultaneously pursue deficiency assessment procedures would serve no purpose.

■ And cases have rejected the theories that a deficiency assessment is a condition precedent to the right of the government to retain taxes paid (*Mudd v. McColgan* (1947) 30 Cal.2d 463 [183 P.2d 10] (*Mudd*) [personal income tax]) and that the failure to file a timely notice of deficiency assessment obliterates the right of the government to retain payments already received when they do not exceed the amount of taxes due (*Owens-Corning Fiberglas Corp. v. State Bd. of Equalization* (1974) 39 Cal.App.3d 532 [114 Cal.Rptr. 515] (*Owens-Corning*) [sales tax]).

*Mudd* involved a refund action for personal income taxes after assessment and payment of deficiencies in which our Supreme Court upheld a judgment

---

[4] Revenue and Taxation Code section 19033, subdivision (a) provides in pertinent part: "If the Franchise Tax Board determines that the tax disclosed by the taxpayer on an original or amended return . . . is less than the tax disclosed by its examination, it shall mail notice to the taxpayer of the deficiency proposed to be assessed . . . ."

in favor of the Franchise Tax Commissioner. In *Mudd*, the taxpayer contended that compliance with the time limitation for mailing a notice of deficiency was a condition precedent to the exercise of a right to collect the tax and not a statute of limitations. The taxpayer ventured this argument because, within three years after the filing of the tax return at issue, the statute of limitations for mailing a notice of deficiency had been changed from three to four years, and the notice of deficiency was mailed more than three but less than four years after the filing of the return. The court rejected the taxpayer's argument and held that the time limitation for mailing a notice of deficiency was not a condition precedent to the exercise of a right to collect the tax but was a statute of limitations. (*Mudd*, *supra*, 30 Cal.2d at pp. 466–467.)

In *Owens-Corning*, a refund action involving sales taxes, the issue was " 'whether the State Board of Equalization may retain [advance payment of estimated sales tax liability] voluntarily deposited with it even though it failed to issue, within the three-year statutory period of limitations, a Notice of Deficiency Determination stating the additional tax liability against which those funds were offset.' " (*Owens-Corning*, *supra*, 39 Cal.App.3d at p. 535.) The court held that the government was entitled to retain the funds and that the taxpayer was not entitled to a refund. The court explained: "Applicable here is the statement in *Lewis* v. *Reynolds* (1932) 284 U.S. 281, 283 [76 L.Ed. 293, 294, 52 S.Ct. 145, 1932-1 C.B. 130], where, after an initial assessment had been paid, a claim for refund was filed and the statute of limitations for enforcement had lapsed. The federal Commissioner of Internal Revenue was allowed to recompute the tax liability, arriving at a greater liability than before by denying a deduction previously allowed. 'Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.' " (*Owens-Corning*, *supra*, 39 Cal.App.3d at p. 536.)

■ In sum, the Jibilians do not establish that FTB's failure to mail them a notice of deficiency assessment creates a right to a tax refund.

Accordingly, as a matter of law, grounds (3), (4), and (5) fail to state viable claims for tax refunds. Therefore, we need not address the Jibilians' other assertions of error. The trial court properly sustained the demurrer.

## DISPOSITION

The judgment is affirmed. Defendant and respondent Franchise Tax Board is entitled to costs on appeal.

Rothschild, J., concurred. Vogel, J., concurred in the judgment only.

Appellants' petition for review by the Supreme Court was denied May 10, 2006, S142011. George, C. J., did not participate therein.