[No. B189240. Second Dist., Div. Four. Jan. 16, 2007.]

CITY NATIONAL CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

## COUNSEL

Sherrill Johnson; Quinn Emanuel Urquhart Oliver & Hedges, Timothy L. Alger, David E. Azar and Kenneth R. Chiate for Plaintiff and Appellant.

Bill Lockyer, Attorney General, W. Dean Freeman, Joseph M. O'Heron, Donald R. Currier and Brian D. Wesley, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**WILLHITE, J.**—Plaintiff and appellant City National Corporation (City National) appeals from an order dismissing its tax refund action after the trial court sustained without leave to amend the Franchise Tax Board's (FTB) demurrer to City National's amended complaint. FTB asserted in its demurrer that the trial court was without jurisdiction to hear City National's claim for a refund because City National had not yet paid approximately $50 million in proposed assessments for the tax years at issue. City National contends it had paid all taxes that were due at the time it filed its refund action, and that it was not required to pay the proposed assessments because they were not yet due. City National also contends that, in any event, dismissal of its complaint was improper because: (1) the proposed assessments issued before the action commenced were withdrawn, and the proposed assessments issued after the action commenced could not divest the trial court of jurisdiction; and (2) if, as FTB contends, FTB is required to litigate in a single action all disputed tax issues for the years at issue, the appropriate course is for FTB to assert the proposed assessments as a defense to City National's complaint.

City National's first contention is correct: The proposed assessments were not final, and therefore City National had paid all of the taxes required to maintain an action for a refund. Accordingly, we reverse the judgment of dismissal.

## BACKGROUND[1]

City National, through a wholly owned affiliate, created several subsidiaries—two real estate investment trusts (REIT's), a regulated investment company, and two insurance companies—through which it claimed certain tax benefits for tax years 1999 through 2002. In December 2003, FTB announced that it intended to disallow tax benefits for certain types of transactions related to REIT's, regulated investment companies, and insurance companies. A voluntary compliance initiative (VCI) was enacted, which allowed taxpayers who participated in those kinds of transactions to amend their tax returns and limit potential penalties. The VCI provided an option that allowed taxpayers to retain their right to file a claim for a refund.

In April 2004, City National filed amended tax returns for the tax years 1999 through 2002, paid the disputed taxes and interest for those years (more than $80 million), and filed claims for refund of those taxes. In November 2004, City National filed an additional claim for refund of taxes paid for tax year 2003. City National's claims for refund were deemed denied when FTB did not take action on them within six months of the claims.

On March 22, 2005, FTB issued notices of proposed assessments (NPA's) to City National, proposing to assess additional taxes and penalties (unrelated to the taxes City National disputed in its refund claims) for tax years 1998 through 2003. Identical NPA's were issued on March 23, 2005. The numbers assigned to the March 23, 2005 NPA's were the same as the numbers assigned to the March 22, 2005 NPA's. On March 25, 2005, FTB sent to City National documents entitled "Revision or Withdrawal of Notice of Proposed Assessment" for each tax year from 1998 through 2003. Each document states that the proposed assessment "referenced above" has been withdrawn. There is an "NPA Number" and an "NPA Date" at the top of each document. Because the March 22, 2005 NPA's and the March 23, 2005 NPA's were identical—including the NPA numbers—the NPA numbers on the withdrawal

---

[1] Because this case comes to us from a dismissal following the sustaining of a demurrer, we assume the truth of all facts alleged in the complaint, and treat as having been pled relevant matters that properly are the subject of judicial notice. (*Hirsch v. Bank of America* (2003) 107 Cal.App.4th 708, 716 [132 Cal.Rptr.2d 220]; *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098–1099 [95 Cal.Rptr.2d 779].) Our discussion of the factual background is based on the allegations of the amended complaint and matters that are properly subject to judicial notice.

documents match the numbers on both sets of NPA's. The "NPA Date" shown on those documents, however, is March 23, 2005.

In May 2005, City National filed a protest of all of the March 22, 2005 NPA's. On June 10, 2005, City National filed the instant action, seeking a refund of the disputed taxes and interest it paid in April 2004 under the VCI program for tax years 1999 through 2002, and the taxes and interest it paid for tax year 2003 that were attributable to the REIT's. In addition, City National sought declaratory relief, seeking a determination that the NPA's had been withdrawn or that City National was not required to pay the amounts listed in the NPA's in order to perfect its right to litigate its refund claim. Two weeks later, in July 2005, FTB reissued the NPA's it had issued originally on March 22, 2005.[2] City National filed a protest of those subsequent NPA's in August 2005.

FTB demurred to the complaint on the ground that City National did not allege that it had exhausted its administrative remedies or paid the full amount owed under the NPA's. The trial court sustained the demurrer with leave to amend. City National filed an amended complaint that omitted any reference to any of the NPA's, omitted the claim for declaratory relief, and alleged that as of the filing of the action on June 10, 2005, City National had paid all taxes FTB claimed to be due. FTB demurred to the amended complaint on the same ground as its previous demurrer, and the trial court sustained the demurrer without leave to amend. City National timely filed a notice of appeal from the subsequent order of dismissal.

## DISCUSSION

█ There are two rules of law at issue in this case. The first rule is found in article XIII, section 32 of the California Constitution, and requires a taxpayer to pay a disputed tax before bringing an action in court to adjudicate the validity of that tax.[3] █ The second rule (which we will refer to as the *Pope Estate* rule) is derived from the res judicata doctrine, and it requires, with certain exceptions not relevant to our discussion here, that all tax liability issues for a tax year be litigated in a single action. (*Pope Estate Co. v. Johnson* (1941) 43 Cal.App.2d 170 [110 P.2d 481] (*Pope Estate*); see also

---

[2] At the hearing on FTB's demurrer to the original complaint, FTB's attorney conceded that there was confusion caused by the withdrawal documents, and stated that the July 2005 NPA's were "re-issuances" of the March 22, 2005 NPA's.

[3] Article XIII, section 32 of the Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

*Sprint Communications Co. v. State Bd. of Equalization* (1995) 40 Cal.App.4th 1254, 1260 [47 Cal.Rptr.2d 399] (*Sprint*).)

City National contends it complied with the Constitution because it paid all of the taxes that are the subject of its refund action, and it is not required to pay the proposed assessments set forth in the NPA's because they are not yet due.[4] FTB contends that, because the *Pope Estate* rule requires that all tax liability for the tax year or years at issue be litigated in a single action, City National must pay in full all disputed tax assessments, including proposed assessments, before filing a tax refund action. City National has the better argument.

■ Relying upon *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633 [217 Cal.Rptr. 238, 703 P.2d 1131] (*State Board*), a case involving the partial payment of final assessments, FTB correctly states that "an action for refund may not be maintained until the full amount claimed due for a given reporting period is paid," and that "[a]ll taxes assessed in any given tax year must be paid in full before a tax refund action can be filed." The fault in FTB's position is that the amounts set forth in the NPA's are *not* assessed taxes that are "claimed due." Indeed, although City National has consistently asserted that the NPA's are not assessed taxes that are due, FTB has ignored this issue, both in the trial court and in its respondent's brief on appeal.

■ The Revenue and Taxation Code provides a procedure by which a proposed assessment becomes a final assessment that is due and payable. (See *Schatz v. Franchise Tax Bd.* (1999) 69 Cal.App.4th 595, 601 [81 Cal.Rptr.2d 719] [" 'A[] . . . tax deficiency is "assessed" . . . not when the notice of the assessment is filed, but when the assessment becomes "final" ' "].) Under that procedure, if FTB determines that the tax disclosed by the taxpayer on an original or amended return is less than the tax disclosed by FTB's examination, FTB must send the taxpayer a notice of the deficiency FTB proposes to assess. (Rev. & Tax. Code, § 19033, subd. (a).)[5] The taxpayer then has 60 days in which to file with FTB a written protest against the proposed assessment. (§ 19041, subd. (a).) If no protest is filed, the proposed assessment becomes final upon the expiration of that 60-day period. (§ 19042.) If a protest is filed, FTB must reconsider the proposed assessment. (§ 19044, subd. (a).) After reconsideration, FTB mails a notice of action to the taxpayer, and the taxpayer has 30 days in which to appeal from FTB's action. (§ 19045, subd. (a).) The appeal is heard by the State Board of Equalization, which then notifies the taxpayer of its determination. (§ 19047.) ■ The board's

---

[4] City National raises other arguments in its appeal related to whether the March 22, 2005 NPA's were withdrawn and whether the July 2005 NPA's divest the trial court of jurisdiction. We need not address those arguments in light of our resolution of this case.

[5] Undesignated statutory references are to the Revenue and Taxation Code.

determination becomes final 30 days after notification, unless the taxpayer or FTB files a petition for rehearing within 30 days (in which case the determination becomes final 30 days after the board issues its opinion on the rehearing petition). (§ 19048.) Once the deficiency is determined and the assessment becomes final, FTB must send the taxpayer a notice and demand for payment of the assessment; payment "is due and payable at the expiration of 15 days from the date of the notice and demand." (§ 19049, subd. (a).)

In the present case, City National filed protests against the March 22, 2005 NPA's and the July 2005 NPA's. There is no indication in the record that at the time of the demurrer FTB had taken any action on those protests. Therefore, the proposed assessments were not final and City National had no obligation at that time to pay them.[6] (See *In re King* (9th Cir. 1992) 961 F.2d 1423, 1427 ["[I]t is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final. In California, this final date is no less than 60 days after the issuance of the notice of proposed additional tax. Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay. This view is bolstered by the fact that under [former] Tax Code § 18597 [now § 19049], the taxpayer is not required to make payment until after the assessment becomes final"].)

The *Pope Estate* rule that all tax liabilities for the time period at issue must be litigated in a single action does not convert the proposed assessments into final assessments that City National must pay before it can prosecute its refund action. None of the cases FTB cites so holds. Instead, those cases simply address what tax deficiencies the taxing authority may—or must—assert in defense against a tax refund action. (See, e.g., *State Board*, *supra*, 39 Cal.3d 633 [taxpayer cannot pay only a portion of a final assessment and file refund action seeking refund of that portion because under *Pope Estate* rule the taxing authority would be compelled to litigate the entire tax bill, including the unpaid portion of the assessment]; *Sprint*, *supra*, 40 Cal.App.4th 1254 [taxing authority may raise as a setoff against a refund action a tax deficiency that is otherwise barred by the statute of limitations].)

■ Because the proposed assessments set forth in the NPA's were not final and City National had paid all taxes that were due at the time it filed its refund action, the trial court erred in dismissing the amended complaint.

---

[6] In referring to the time of the demurrer, we do not intend to imply that we have determined that an assessment that becomes final after a refund action has been filed must be paid before the action may continue. That issue is not before us in this case.

## DISPOSITION

The judgment is reversed. City National shall recover its costs on appeal.

Epstein, P. J., and Manella, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 11, 2007, S150563. George, C. J., did not participate therein.