Filed 12/23/24

<u>**CERTIFIED FOR PUBLICATION**</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRYCE D. HOVANNISIAN et al., | F087585 |
| Plaintiffs and Appellants, | (Super. Ct. No. 22CECG01203) |
| v. | |
| CITY OF FRESNO et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Jonathan M. Skiles, Judge.

Law Office of Ira Bibbero and Ira Bibbero for Plaintiffs and Appellants.

Petrie Leath Larrivee & O'Rourke and Oliver Larrivee for Defendants and Respondents City of Fresno, City of Fresno Enforcement Division, and John Giannetta.

Daniel C. Cederborg, County Counsel, and Peter Wall, Chief Deputy County Counsel for Defendant and Respondent Oscar J. Garcia, as Fresno County Tax Collector.

-ooOoo-

### INTRODUCTION

Appellants and siblings Bryce D. Hovannisian and Lindsay E. Hovannisian purchased several properties at a tax sale in 2020 from the City of Fresno (the City), which is a respondent in this matter alongside the City of Fresno Code Enforcement Division, John Giannetta, and Oscar J. Garcia as the Fresno County Tax Collector. Prior

to the tax sale, these properties were the subject of special assessments for nuisance abatement costs and unpaid penalties, pursuant to which the City recorded liens against the properties. The County of Fresno (the County), which collects taxes on behalf of the City, issued tax bills for the 2020–2021 tax period to appellants after their purchase. These bills included the special assessments for nuisance abatement imposed prior to the tax sale. Appellants sought to pay only the amount of the tax bills that did not include these special assessments, contending the tax sale had removed any liens for nuisance abatement and they were not responsible for these assessments, which caused the County to reject the payments.

Appellants then sued the City and the County to quiet title to the properties, to which the City and the County demurred, asserting that Revenue and Taxation Code section 4807 prevented suits impeding the collection of taxes and that appellants were required to pay the taxes and then seek a refund. The trial court agreed and sustained three separate demurrers on this same ground, granting leave to amend after the first two and denying it after the third. This appeal therefore does not concern the validity of the underlying tax liens, but rather a procedural issue: whether appellants can sue the City and the County prior to payment of the assessments, or whether they must bring their complaints in an action for a refund.

We affirm the trial court's ruling because appellants' suit, brought prior to payment, is barred by Revenue and Taxation Code section 4807. (Undesignated statutory references are to the Revenue and Taxation Code.) Appellants must pay their tax bills and seek a refund in order to raise any legal issues related to the validity of the special assessments.

**BACKGROUND**

The factual background of this case is derived from appellants' complaints. Appellants alleged they purchased 27 properties, all of which were tax-defaulted, from the Fresno County Tax Collector at a public auction occurring March 13 through

2.

March 16, 2020. The deeds denoting the purchases were recorded on April 22, 2020. The City's Code Enforcement Division had recorded special assessments against each of the properties in 2019 and 2020, prior to the sale to appellants. When these special assessments were included on the tax bills appellants received after the sale, appellants refused to pay them, contending they should have been discharged by the tax sale. Appellants did, however, offer to pay the remaining portion, which was refused by the tax collector.

Appellants filed their initial complaint on April 20, 2022, and their first amended complaint on September 13, 2022. The initial complaint included two causes of action to quiet title, while the first amended complaint included four separate causes of action to quiet title. Respondents demurred in November 2022. The trial court sustained the demurrer on May 4, 2023. It found section 4807 bars suits impeding the collection of property taxes, which includes those assessments collected at the same time and in the same manner as county taxes. It also found special assessments were collected at the same time and in the same manner as municipal taxes. However, because the City had transferred tax collection duties to the County, as required by state statute, all municipal taxes from the City were thus collected at the same time and in the same manner as county taxes. Therefore, it found section 4807 barred the suit. Additionally, the court found appellants had an adequate remedy at law in the form of an action for a refund, which prohibited appellants from seeking an equitable remedy in advance of paying the tax.

The second amended complaint was filed by appellants on May 19, 2023, and similarly included four causes of action to quiet title. Demurrers were again filed in June 2023, which were sustained on September 27, 2023, for the same reasons as the initial demurrers. The court noted that, even though appellants submitted "arguments materially similar" to the prior demurrer, which was "suggestive that there is no reasonable

3.

probability to cure the pleadings" through amendment, it would exercise "great liberality" and allow appellants to attempt to amend again, as requested.

The third amended complaint was filed on October 17, 2023. Demurrers were filed in November 2023, and on January 17, 2024, the court again sustained the demurrers. It found appellants "may not use these procedural vehicles for the relief they seek" because the suit "necessarily requires the evaluation and/or interruption of tax collection." It found again such interruption was barred by section 4807, and that section 3727, which authorizes suits to quiet title to property purchased at a tax sale, did not override the concerns of section 4807. It also found appellants had an adequate remedy at law and, therefore, could not seek equitable relief.

Judgment in the matter issued on January 25, 2024, and a notice of appeal was timely filed on February 6, 2024.

## DISCUSSION

### I. Standard of Review

"Appellate courts independently review an order sustaining a general demurrer and make a de novo determination of whether the pleading 'alleges facts sufficient to state a cause of action under any legal theory.'" (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 253.) "'We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.'" (*Monterey Coastkeeper v. Central Coast Regional Water Quality Control Bd., Etc.* (2022) 76 Cal.App.5th 1, 12.) "[W]here the action is barred as a matter of law, the demurrer is properly sustained without leave to amend." (*Cal. Auto. Dismantlers Assn. v. Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742; see *California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 938.)

4.

**II. The Special Assessments Here Are Collected at the Same Time and in the Same Manner as County Taxes, and Therefore Fall Under Section 4807**

The primary question posed in this appeal is whether the special assessments at issue fall within the statutory definition of taxes subject to section 4807. This is a question of law we review de novo. (*Davis Boat Manufacturing-Nordic*, *Inc. v. Smith* (2023) 95 Cal.App.5th 660, 672; *Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 460.) We find the special assessments in question here fall within section 4807.

Section 4807 states "[n]o injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected." "A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as 'pay first, litigate later,' is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1116.) Section 4807 is itself a statutory codification of a constitutional provision, which states, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.)

As our Supreme Court has noted, this constitutional provision establishes "that the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638.) This rule "advances an important public policy in that it 'ensures that essential public services are not disrupted during the pendency of tax challenges.'" (*Mojave Pistachios, LLC v. Superior Court* (2024) 99 Cal.App.5th 605, 626.) The rule has been "construed broadly

to bar not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax." (*State Bd. of Equalization*, *supra*, at p. 639.) The language used in the statute and in article XIII of the California Constitution is "nearly identical, and the policy behind both of them is the same." (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 400.) "The fact that a petitioner's lawsuit is based on the alleged illegality of the challenged tax under state law does not excuse compliance with the 'pay first' rule." (*Mojave Pistachios, LLC*, *supra*, at p. 627.) "It has long been established that suits to enjoin the collection of taxes may not be maintained even though the imposition of the tax may be 'illegal and void.'" (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1141.)

In relation to section 4807, "'taxes' includes assessments collected at the same time and in the same manner as county taxes." (§ 4801.) The City was authorized to "establish a procedure [by ordinance] for the abatement of a nuisance and make the cost of abatement of a nuisance upon a parcel of land a special assessment against that parcel." (Gov. Code, § 38773.5, subd. (a).) The City in fact enacted such an ordinance. The Fresno County Tax Collector is then charged, by ordinance, with collecting "the amount of the special assessment at the same time and in the same manner as ordinary municipal taxes, and impose the same penalties and procedures, including the sale of the property, in case of delinquency, as provided for ordinary municipal taxes. *All laws applicable to the levy, collection and enforcement of property taxes shall be applicable to the special assessment.*" (Fresno Mun. Code, § 1-512, subd. (e), italics added.) This language largely mirrors the authorizing statute. (Gov. Code, § 38773.5, subd. (c) ["The assessment may be collected at the same time and in the same manner as ordinary municipal taxes are collected"].)

Appellants seize on this language to argue this assessment is not a "tax" within the meaning of sections 4801 and 4807 because it is to be collected at the time and in the

manner of *municipal* taxes, not county taxes. However, as a factual and legal matter, municipal taxes are collected at the same time and in the same manner as county taxes. In 1969, the Legislature required all cities to transfer their municipal tax collection duties over to county tax collectors and barred cities from collecting taxes on their own. (Gov. Code, § 51501.) The City had, in fact, already transferred such duties in 1958, noting that for so long as county officials were permitted to collect city taxes, the duties previously assigned to city tax collectors, including duties related "to the collection, payment and enforcement of such taxes, … shall be performed by the county assessor." (Fresno Mun. Code, § 7-201.) California statute provides that "[t]he taxes so levied shall be collected at the time and in the manner of county taxes." (Gov. Code, § 51553.)

Appellants argue that the words "so levied" contained in Government Code section 51553 indicate the statute does not apply to special assessments, but rather *only* applies to regular property taxes calculated from the assessment rolls. However, under article 2 of the relevant chapter of the Government Code concerning the transfer of city tax functions, the duties transferred specifically include the "collection, payment, and enforcement of the taxes, including delinquent taxes." (Gov. Code, § 51542, subd. (c).) And by city ordinance, "[a]ll laws applicable to the levy, collection and enforcement of property taxes shall be applicable to the special assessment." (Fresno Mun. Code, § 1-512, subd. (e).) The sole direction provided under the statute related to manner of collection is that city taxes—which under the City's ordinance includes special assessments—are collected by the enforcing county "at the time and in the manner of county taxes." (Gov. Code, § 51553.) Thus, here, special assessments are subject to the same collection and enforcement laws as municipal property taxes, and municipal property taxes are collected at the same time and in the same manner as county taxes. (Gov. Code, § 51553; Fresno Mun. Code, § 1-512, subd. (e).)

Appellants argue Government Code section 51553 does not permit the collection of special assessments, because another statute, Government Code section 51800, is what

7.

permits counties to collect such assessments. Government Code section 51800 states: "Where the duties of assessing property and collecting city taxes are performed for a city by the county assessor and the county tax collector in a manner provided by law, cities and counties may enter into an agreement whereby special assessments may be collected at the same time and in the same manner as county taxes are collected and all laws applicable to the levy, collection and enforcement of county taxes shall be and are hereby made applicable to such special assessments." Appellants claim no such agreement exists between the City and the County allowing the latter to collect special assessments on behalf of the former, and thus, there is no lawful means by which the County is collecting special assessments on behalf of the City. This argument is not persuasive and, instead, reinforces our conclusion that the County is collecting these assessments at the same time and in the same manner as county taxes.

First, it bears reiterating the definition in section 4801, which states "'taxes' includes assessments collected at the same time and in the same manner as county taxes." This language indicates the inquiry is primarily a factual one: what matters is whether the assessments are, in fact, being collected at the same time and in the same manner as county taxes, not whether that is how they are *supposed* to be collected. Section 4801 does not define taxes to include assessments *lawfully* collected at the same time and in the same manner as county taxes, or words to that effect. This is an important distinction, because it means a taxpayer cannot avoid section 4807 by artfully pleading that the manner or means of collecting the assessment was unlawful, thus allowing the taxpayer to bypass the well-established public policy of "pay first, litigate later." It is undisputed the special assessments here are being collected at the time and in the manner of county taxes. Appellants' complaints noted the special assessments were "included within the Fresno County July 1, 2020–June 30, 2021 secured property tax details." Thus, as a factual matter, these assessments fall squarely within the statute's definition as

8.

"assessments collected at the same time and in the same manner as county taxes." (§ 4801.)

Second, nothing has been shown to us demonstrating that the City and the County have engaged in any unlawful conduct related to the manner in which the County collects taxes on behalf of the City. Government Code section 51800 is, by its plain terms, a permissive grant of power to municipalities. It states "cities and counties *may* enter into an agreement whereby special assessments *may* be collected at the same time and in the same manner as county taxes." (Gov. Code, § 51800, italics added.) The language of this section prescribes no formal requirements for such an agreement, and does not even require the agreement to be written. It is well-established two parties can form an agreement through action alone. (Rest.2d Contracts, § 19; *id.*, § 22; *California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 897 [noting whether an agreement is assented to "may be inferred from the conduct of the parties and surrounding circumstances"].) Such an agreement clearly exists between the City and the County. The City has enacted two pertinent ordinances demonstrating the existence of such an agreement.[1] As discussed *ante*, Fresno Municipal Code section 7-201 generally transfers the authority to collect all City taxes to the County. Further, the City's ordinance authorizing special assessments for nuisance abatements expressly states "the County Tax Collector may collect the amount of the special assessment at the same time and in the same manner as ordinary municipal taxes" and "[a]ll laws applicable to the levy, collection and enforcement of property taxes shall be applicable to the special assessment." (Fresno Mun. Code, § 1-512, subd. (e).) It is clear the City and the County

---

[1]The ordinances are appropriately judicially noticeable as "legislative enactments issued by … any public entity in the United States." (Evid. Code, § 452, subd. (b).)

have the type of agreement allowed by Government Code section 51800, whatever its complete terms may be.[2]

In sum, we conclude that section 4801 encompasses assessments that, as a factual matter, are collected at the same time and in the same manner as county taxes. Here, as both a matter of fact and a matter of law, the assessments are being collected at the same time and in the same manner as county taxes. Because of this, section 4807 bars this suit, which seeks to challenge the assessments as void and would therefore impede the collection of these taxes. Appellants' remedy is to simply pay the taxes and challenge the validity of them in a refund action if the City is not forthcoming with any refund that may be required by law.

Appellants argue this suit is not barred by section 4807 because it does not seek any order specifically barring the County from collecting taxes. This type of argument has already been rejected by our Supreme Court, which has noted the "pay first, litigate later" rule has been "construed broadly to bar not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax." (*State Bd. of Equalization v. Superior Court*, *supra*, 39 Cal.3d at p. 639.)[3] Therefore, a "taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*Id.* at p. 638.) It is inarguable appellants seek to challenge the validity of the special assessments imposed here, and similarly inarguable that a judicial declaration that such special assessments were void or illegal would

[2]To the extent appellants might wish to complain this agreement lacks sufficient details or fails to include necessary terms, this is hardly a matter for this court to decide now. These are not relevant issues in this appeal, nor is there any indication appellants are third-party beneficiaries of this agreement with standing to seek review or enforcement of its terms.

[3]Because the Supreme Court has directed that this rule is to be construed broadly and prohibits declaratory relief actions as well as those seeking specific injunctive relief against a taxing agency, appellants' statutory construction argument to the contrary is unpersuasive. As they are not relevant to the dispute, the court declines to take judicial notice of the assorted municipal codes submitted by appellants in their request for judicial notice.

prevent their collection. If this were not the case—if parties were free to simply ignore a judicial determination about the validity of the assessments—the relief sought by appellants would be moot. Thus, appellants' suit clearly seeks to prevent the collection of these taxes. We do not find this counterargument persuasive.

We conclude the trial court did not err. Section 4807 bars appellants' prepayment suit challenging the validity of the special assessments.

## III. Section 3727 Does Not Permit this Suit in Light of Section 4807's Bar

Appellants argue their suit is authorized by section 3727, which permits them to file suit to quiet title. Appellants also claim sections 3727 and 4807 conflict, and section 3727 must be given full application as it is the more specific statute. We disagree. The most straightforward and harmonious reading of the statutes is that while purchasers at a tax sale may generally bring quiet title actions, they may not do so if the relief sought is a prepayment challenge to the validity of a tax.

"'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*People v. Wilson* (2021) 66 Cal.App.5th 874, 878.) "'"A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject." [Citation.] Thus, when "'two codes are to be

11.

construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof.""" (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955.) Further, as a general rule of statutory interpretation, "a later, more specific statute controls over an earlier, general statute." (*Woods v. Young* (1991) 53 Cal.3d 315, 324.)

Section 3727, first enacted in 1939, states that "[w]henever property has been purchased at [a] tax sale, the purchaser or any other person claiming through the purchaser may bring suit to quiet title to all or any portion of the property and prosecute it to final judgment." (§ 3727.) As stated above, section 4807, enacted in 1977, commands "[n]o injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected." (§ 4807.) We see no difficulty in reconciling these statutes. Section 3727 is the more general and earlier enacted statute. It permits a litigant who has purchased property at a tax sale to institute an action to quiet title to that property. Section 4807 limits the reach of section 3727, preventing it from being used against a county or municipality when the effect of it is to "prevent or enjoin the collection of property taxes." Section 3727 could not have impliedly repealed section 4807, which was enacted some 40 years later. These statutes are easily read and understood together: section 4807 limits section 3727 only to the extent a suit under section 3727 attempts to quiet title against a county, municipality, or district by challenging the validity of a tax prior to payment.

## IV. Appellants Have an Adequate Remedy at Law

As a separate and independent reason for sustaining the demurrers, the trial court found appellants had an adequate remedy at law by way of an action for a refund. For this reason, the court held appellants could not seek equitable relief. Appellants argue

they have no adequate remedy at law, because the special assessments are not "taxes" within the definition of section 4801, and thus they cannot seek a refund of them. Unsurprisingly, given our conclusion above that these assessments fit within section 4801's definition of "taxes," we find this argument unpersuasive.

"[D]eclaratory relief … is in the nature of equitable relief, and equitable relief will not be granted if there is a plain, complete, speedy, and adequate remedy at law." (*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 91; see *Phillips v. Price* (1908) 153 Cal. 146, 148 ["[E]quitable relief cannot be had except where the plaintiff appears to be without a plain, speedy, and adequate remedy at law"]; *Moofly Productions*, *LLC v. Favila* (2020) 46 Cal.App.5th 1, 9; *City of Culver City v. Cohen* (2017) 14 Cal.App.5th 1, 16–17.) In this case, there is precisely such an adequate legal remedy via a refund action.

As discussed in detail *ante*, within the relevant part of the Revenue and Taxation Code, "'taxes' includes assessments collected at the same time and in the same manner as county taxes." (§ 4801.) Because collection duties for special assessments and municipal taxes were turned over to county tax collectors by legislative direction of both the California Legislature and the City, they are collected at the same time and in the same manner as county taxes. (See pt. II, *ante*.) They therefore are included within the definition of "taxes" set forth in part 9 of division 1 of the Revenue and Taxation Code. (§ 4801.)

Part 9 of the Revenue and Taxation Code provides for refunds of improperly paid taxes. "Any taxes paid before or after delinquency shall be refunded if they were: [¶] … [¶] (c) Illegally assessed or levied." (§ 5096, subd. (c).) This is precisely what appellants claim has happened here: they are being asked to pay special assessments that were illegally assessed on them because those assessments should have been eliminated by the tax sale. Part 9 also authorizes a remedy at law if the municipality refuses to refund improperly paid taxes. "The person who paid the tax … may bring an action only in the superior court … against a county or a city to recover a tax which the board of

13.

supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter." (§ 5140.) Thus, an adequate legal remedy exists.

This is not, as appellants also argue, a matter of whether they have exhausted administrative remedies. Exhaustion of administrative remedies may well come into play in a future refund action, which by its terms permits the person to bring an action against a municipality only where the legislative body "has refused to refund on a claim filed pursuant to Article 1." (§ 5140.) But this is not an action for a refund, because appellants admit they have not paid the taxes. Rather than an affirmative defense such as exhaustion of administrative remedies, our holding in this regard is based on the limits of the equitable power held by the courts. Courts do not sanction equitable remedies where adequate remedies at law exist. Since appellants seek only equitable relief here, in the form of a declaration that the City has no interest in their properties and the special assessment liens should be canceled, and they have an adequate remedy at law, their action is barred. We express no opinion, of course, on the merit of any action for refund that may be brought in the future after appellants have paid their taxes.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on this appeal.


PEÑA, J.

WE CONCUR:


FRANSON, Acting P. J.


DE SANTOS, J.


14.